CELANESE CORPORATION OF AMERICA *v.* RUSSELL S. DAVIS, ET AL.

[No. 128, October Term, 1945.]

*Decided May 16, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*R. Dorsey Watkins*, with whom were *Piper, Watkins, Avirett & Egerton* on the brief, for the appellant.

*Albert A. Levin, Special Assistant Attorney General,* with whom was *William Curran, Attorney General,* on the brief, for the appellee.

COLLINS J., delivered the opinion of the Court.

This is an appeal from the Superior Court of Baltimore City by Celanese Corporation of America involving what appellant claims to be an overpayment for Unemployment Compensation, for the quarterly period July, 1, 1944, to September 30, 1944, in the amount of $84,279. It involves the interpretation of Sec. 7 (c) (3) of Article 95A, Annotated Code of Maryland (1943 Supplement), Acts of 1943, Chapter 435, Sec. 7 (c), which provided in part, "no employer's rate shall be less than 2.7 per cent for any fiscal year if his total annual payroll in the calendar year immediately preceding such fiscal year exceeded 150 per cent. of the total payroll in the calendar year 1940." The number of employees of the appellant in 1940 was 10,567, in 1943 was 11,266, and in 1944 was 10,193.

The amount of the payroll reported by the appellant to the Maryland Unemployment Compensation Board for the year 1940 was $12,423,931.48. The payroll reported in 1943 was $19,301,259.52. The increase in the payroll in 1943 over 1940 therefore was $6,877,328.04. Based on these figures the annual payroll for 1943, the preceding year, exceeded 150 per cent. of the payroll in the calendar year 1940. The Board therefore assessed the appellant at the rate of 2.7 per cent. An appeal was taken from the order of the Unemployment Compensation Board to the Superior Court of Baltimore City, which order was affirmed by that court, and judgment was en-

tered for the defendants for costs. The appellant, appealing, claims that based on merit rating the tax should be 0.9 per cent.

If the Section above quoted is to be literally construed, the rate of tax (2.7 per cent.) levied by the Unemployment Compensation Board was correct.

The appellant contends that the payroll reported to the board in 1943 included $902,360 paid in 1943 pursuant to a War Labor Board directive requiring compensation increases retroactive to October 1, 1942, and of this amount $446,871 represented compensation for work in 1942. The Unemployment Compensation Board did not deem it necessary to a decision of the case to decide whether the wage item of $446,871, should be allotted to 1942 or let remain in the 1943 payroll because in either event the amount of the empolyer's reported payroll for wages paid in 1943 would exceed 150 per cent. of its actual total payroll for wages paid and reported in 1940. For the same reason as given by the board we see no reason to pass upon that question.

The appellant argues (1) that the 150 per cent. limitation of Article 95A, Sec. 7 (c) (3) is not applicable to appellant as this provision was intended to cover the case of war expanded industries and 1940 was used as a base for the reason that that year was supposed to represent normal business not influenced by war activities. Further that appellant is a war contracted industry and 1940 was not a normal employment year because of a strike and voluntary loss of wages by the employees. The strike lasted twelve days, causing a loss in wages of $464,475 and it took five weeks to get the plant back in full production. Further that the 150 per cent. provision was intended to apply to war industries only.

The appellant argues (2) that the inclusion of the appellant in the 150 per cent. war risk clause would render it unconstitutional.

Unemployment compensation was first adopted by this State at the Second Extraordinary Session of the Legislature in December, 1936. Section 2 of Chapter 1 of the

Act creating unemployment insurance sets a guide for the interpretation and application of that Act. It states that economic insecurity due to involuntary unemployment being a serious menace to the health, morals, and welfare of the people of the State requires appropriate action by the Legislature to prevent its spread. Further, "This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The Legislature, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used, for the benefit of persons unemployed through no fault of their own."

At the regular session of the Legislature in 1939 an Act was passed, Chapter 278, Section 7 (d) amending the Unemployment Compensation Act requiring the Unemployment Compensation Board to investigate and study the operation of the law for the purpose of determining the advisability of establishing a rating system which would equitably rate the unemployment risk and fix the contribution to the Unemployment Compensation Fund of each employer in order to encourage the stabilization of employment. As a result at the 1943 Session of the Legislature an Act was passed, Chapter 435, amending the Unemployment Compensation Law. The title states that it was to add a section "* * * providing experience rating under certain conditions in the contribution rate of employers who meet certain requirements" and in that Act the section herein in dispute was adopted. This section remained in effect during the Regular Session of the Legislature in 1945 and was repealed by Chapter 2 of the Extra Session of the Legislature in 1945, effective October 1, 1945.

Appellant relies strongly on the case of *Maryland Unemployment Compensation Board v. Albrecht*, 183 Md. 87, 36 A. 2d 666. That case is readily distinguishable from the one at bar. There the interpretation of Code, 1943 Supplement, Article 95A, Section 19 (f) (4) was before the court as to whether two different businesses were under common control by reason of the fact that the owners of an office building owned the majority of stock in a book binding business. This court there held that the facts in the case were not such as to bring these parties within "common control" as defined by the Act. In the case before this court the facts are not in dispute and the words of the statute are plain and simple. To adopt appellant's contention this court must add words to the statute which do not there appear. The purpose of the Act enacted in 1936, hereinbefore quoted, states that the achievement of social security requires protection against unemployment. "This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance."

To encourage stabilization of employment the Legislature in 1943 passed an Act changing the rates and enacting the clause in question. Anticipating that postwar unemployment would drain the unemployment fund, it provided that no employer's rate should be less than 2.7 per cent. for any fiscal year if his total annual payroll in the calendar year immediately preceding such fiscal year exceeded 150 per cent. of the total payroll in the calendar year 1940. Some line had to be drawn and some standard set. The Legislature could have provided that the test be the increase in the number of employees or could have provided for a different percentage of increase as was done in other States. However, the Legislature did not see fit to do this but established a clear and easily determined standard. There is nothing in the Acts or in

the preambles thereto to confine this classification to war industries or to provide that any wages lost by reason of strike should be deducted from the 1940 base. If the Legislature had seen fit to confine this to war industries only and to provide for strikes as contended by appellant, they could have in plain language done so. However, this would no doubt have led to endless confusion. If loss of wages by strikes were to be excepted from the 1940 base, why should not loss of wages due to a breakdown of machinery, fires, or other interruptions be so deducted?

In the case of *State of Minnestota v. Donovan,* 1944, 218 Minn. 606, 16 N. W. 2d 897, the provisions of the State Employment and Security Act which provided a war risk contribution on businesses and classified employers according to the amount of their payrolls and as to whether they commenced business after December 31, 1940, were before the court. The court said in that case at page 900 of 16 N. W. 2d as follows: "In the instant case, the Legislature selected December 31, 1940, as the 'before' and 'after' date for purposes of taxation. That date represents more than a mere calendar date. It represents the dividing line between prewar normal peacetime economy and abnormal war economy. The provisions of the act would have been too indefinite if the Legislature had merely said that any employer who became subject to the act after the war economy had set in would be subject to a 'war risk contribution' tax. So a date had to be selected to separate war economy from prewar economy, and December 31, 1940, was the date selected. The period before and the period after that date are entirely different in their economic, as well as in many other aspects, and enough facts have been set out to show that there is a reasonable and logical ground for making a distinction, that there is a substantial difference between the subjects classified, and that the classification made here 'bears a reasonable relation to a permitted end of governmental action.' There is a real reason for the classification. It is not

the result of 'accident,' 'whim,' 'caprice,' or 'hostility' to any individual or class of individuals." See also the case of *Buschbaum & Co. v. Gordon,* 1945, 389 Ill. 493, 59 N. E. 2d 832, *certiorari* denied by the Supreme Court of the United States, 325 U. S. 838, 89 L. Ed. 1964.

As pointed out by the appellee, appellant's argument that it was not subject to this provision because it was not a war industry and that its payroll and number of employees were not increased as a result of the war, would be the same argument that a corporation which has no children should not pay a tax for the maintenance of schools. *Carmichael v. Southern Coal & Coke Co.,* 301 U. S. 495, 523, 81 L. Ed. 1245. If the payroll for the year 1940 should not be used as the base year on account of a strike during that year, some other corporation might validly argue that its payroll for the year 1940 should not be used as its base year because it was unable to get raw materials, or because it had a fire, or because the machinery broke down for a long period of time, and that deductions should be made accordingly.

It is a primary rule of statutory construction that statutes should be construed to effectuate the intention of the Legislature. The meaning and intention must first be sought in the language of the statute itself. If that language is plain and free of ambiguity and has a definite and sensible meaning, such is conclusively presumed to be the meaning of the Legislature in enacting the statute. The courts are not at liberty to gather a legislative intention contrary to the plain words of the statute or to insert words to express an intention not shown in the original form. The court is justified in disregarding the natural import of the language only when some imperative reason is found in a statute for enlarging or restricting its meaning. *Wilson v. State,* 21 Md. 1; *Roach v. Jurchak,* 182 Md. 646, 652, 35 A. 2d 817. In this case we find no imperative reason in the statute, or in the preamble thereto, or in the guide for the interpretation and application of the Act, for inserting the words

which would exempt the appellant from the section now before us.

As was said in the case of *State Tax Commission v. Potomac Electric Power Co.*, 182 Md. 111, 112, at pages 115 and 116, 32 A. 2d 382, 384, quoting from Chief Justice Marshall in the case of *Sturges v. Crowninshield*, 4 Wheat. 122, 202, 4 L. Ed. 529, 550, "It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case for which the words of an instrument expressly provide, shall be exempted from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of words be varied, construction becomes necessary, and a departure from the obvious meaning of words, is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would without hesitation, unite in rejecting the application." The remedy of the appellant appears to have been action before the Legislature to prevent passage of the Act, rather than appeal to the court to change the Act. *County Commissioners of Anne Arundel County v. English*, 182 Md. 514, 519, 35 A. 2d 135.

The appellant here seeks to be exempted from the 150 per cent. clause. The courts always construe the tax statutes strictly against the person claiming the exemption. The taxing power is never presumed to be relinguished by the State unless such an intention is expressed in clear and explicit language. Any doubt as to whether an exemption should be granted is resolved in favor of the State. *Havre de Grace v. Havre de Grace & Perryville Bridge Co.*, 145 Md. 491, 495, 125 A. 704.

It is contended that if the section here in question is applied to appellant the provision would be unconstitu-

tional under Article 23 of the Declaration of Rights of the Constitution of Maryland and under Section 1 of the Fourteenth Amendment to the Constitution of the United States. Of course, a statute to be constitutional, which applies only to those persons who fall within a specified class, must be reasonable and not arbitrary in its manner of classification. The grounds of difference must have a fair and substantial relation to the object of the legislation in order that all persons in similar circumstances will be treated alike. *Maryland Unemployment Compensation Board v. Albrecht, supra,* 183 Md. 87, 36 A. 2d 666.

It was pointed out by Chief Justice Stone in the case of *Carmichael v. Southern Coal & Coke Co., supra,* 301 U. S. 495, 81 L. Ed. 1245, at page 1253, "This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption infringe no constitutional limitation." He further said, 301 U. S. 495, 81 L. Ed. at page 1254, "The decision cannot be said to be arbitrary because it falls in the twilight zone between those members of the class which plainly can and those which plainly cannot expediently. be taxed." It was also pointed out, 301 U. S. 495, 81 L. Ed. at pages 1260 and 1261, "It is not a valid objection to the present tax, conforming in other respects to the Fourteenth Amendment, and devoted to a public purpose, that the benefits paid and the persons to whom they are paid are unrelated to the persons taxed and the amount of the tax which they pay—in short, that those who pay the tax may not have contributed to the unemployment and may not be benefited by the expenditure."

The Supreme Court of Illinois in reference to the constitutionality of certain classifications under the Unemployment Compensation Act of that State, said in the case of *Buschbaum & Co. v. Gordon, supra,* 389 Ill. 493, 59 N. E. 2d 832, at page 842, "* * * It must be assumed that the Legislature, in making the classifications, acted upon its experience, and as a result of its investigation and study of the conditions which the legislation was intended to remedy. A classification so made will not

be disturbed by the courts unless its clearly appears that there is no fair reason or basis for the classification." See also *Madden v. Commonwealth of Kentucky*, 309 U. S. 83, 88, 84 L. Ed. 590, 593, as to the classification for taxation. See also *Brown v. State*, 177 Md. 321, 328, 9 A. 2d 209.

It has been held by this court that unless the distinctions and classifications made by statutes are obviously without reasonable foundations in conditions to be dealt with, there is no departure from constitutional powers. It was said by this court in the case of *Maryland Unemployment Comp. Board v. Albrecht, supra,* 183 Md. 87, 36 A. 2d 666, at page 669, "Here the presumption in favor of constitutionality is particularly strong because the Unemployment Compensation Law is a remedial statute and should be construed as far as possible in such a way that its objective of alleviating economic distress may be accomplished."

The Maryland Legislature was faced with the problem of giving merit benefits to those employers with a good unemployment record, to stabilize employment. It was also faced, at the time this section was enacted, with the fact that there was practically no unemployment and with the wise assumption that the Unemployment Compensation Fund must be built up to provide for unemployment payments after the war. That was the problem of the Legislature. If the appellant's business is so affected as to require it to lay off employees, those former employees, whether few or many, of the appellant will draw from the same fund as former employees of so-called "war industries," and from the same fund which appellant and those industries built up to provide for such unemployment. The Legislature, to meet this problem, saw fit to make 1940 the base year and to provide a minimum rate of 2.7 per cent. for those exceeding 150 per cent. of the total payroll in the year 1940, during the preceding year. We see no such discrimination in the classification to hold this section unconstitutional.

*Judgment affirmed, with costs.*