671 A.2d 523

DEPARTMENT OF ECONOMIC AND EMPLOYMENT
DEVELOPMENT, et al.

v.

Maria M. TAYLOR.

No. 794, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Feb. 8, 1996.

256

Michele J. McDonald, Staff Attorney (J. Joseph Curran, Jr., Attorney General and Lynn M. Weiskittel, Assistant Attorney General on the brief for appellant, DEED) all of Baltimore, MD, John S. Mathias, County Attorney and Paul G. Zimmer-

man, Assistant County Attorney on the brief for appellant, Frederick County, both of Frederick, MD, for appellants.

No brief or appearance by appellee's counsel.

Argued Before BISHOP, WENNER and HOLLANDER, JJ.

HOLLANDER, Judge.

In this case, we must decide whether the doctrine of "constructive voluntary quit" constitutes a ground for disqualification from unemployment benefits. We conclude that it does not apply as a bar to recovery of unemployment compensation.

Maria M. Taylor, appellee, applied for unemployment benefits after she was terminated from her employment with the County Commissioners of Frederick County, Maryland ("the County"). The County discharged Taylor because her Frederick County driving permit, which she needed in order to perform her job, was revoked after Taylor was convicted for driving while intoxicated. The Board of Appeals ("the Board") of the Department of Economic and Employment Development ("DEED"),[1] appellant, held that Taylor's loss of her driver's permit constituted a breach of "a condition of continued employment ... required by her employer," and amounted to a "constructive voluntary quit," thus disqualifying her from receiving benefits under the "voluntarily leaving work" provision of the Maryland Unemployment Insurance Act, Md.Code (1991, 1995 Supp.), § 8–1001(a) of the Labor & Employment Article ("L.E.").

Taylor sought review of the Board's decision in the Circuit Court for Washington County. It reversed, holding that Taylor's actions did not amount to "voluntarily leaving work." The Board has now appealed to this Court; appellee did not

---

1. During the proceedings that gave rise to this appeal, the Board was a part of DEED. Effective July 1, 1995, the General Assembly transferred the Board to the Department of Labor, Licensing, and Regulation. 1995 Md.Laws, ch. 120, § 2.

submit a brief or appear at oral argument.[2] The Board presents the following issues for our consideration:

I. Is the Board's determination that Appellee voluntarily left her employment by failing to meet a condition of the employment correct as a matter of law?

II. Is the Board's finding that Appellee voluntarily quit her employment supported by substantial evidence?

We hold that the Maryland Unemployment Insurance Act does not authorize the denial of benefits to a claimant on the ground of "constructive voluntary quitting." Therefore, we answer both questions in the negative and shall affirm the circuit court.

### FACTUAL SUMMARY

Since 1986, Taylor was employed as a laborer for the County. Her job entailed manual work for the County Department of Parks and Recreation, including a variety of parks maintenance and custodial tasks. As part of her job, she was required to operate a County vehicle, both in the parks and on public roads. Therefore, as a condition of her employment, Taylor was obligated to have a valid Maryland driver's license and, in addition, a "Frederick County Employee Driving Permit." In order for employees to retain their driving permits, the County required that the employees have fewer than six points on their driving records.

In January 1989, Taylor was stopped on suspicion of driving while intoxicated. She refused to submit to a chemical test and her driving record indicates that she was not convicted of any alcohol-related offense. Nor was her license revoked, notwithstanding her refusal to take the chemical test. Instead, the Motor Vehicle Administration ("MVA") restricted her driver's license to employment and educational purposes.

---

2. The County Commissioners of Frederick County filed an untimely notice of appeal, and the County did not file a brief or participate in oral argument. Although we ·shall dismiss the County's appeal, *see* Md.Rule 8–602(a)(3), (7), the dismissal of the County's appeal does not affect the justiciability of the Board's appeal. *See* Md.Rule 8–401(a).

This apparently occurred because Earl A. Eyler, the County parks superintendent, wrote a letter to the MVA, dated February 17, 1989, informing it that Taylor needed to have a license to perform her job satisfactorily. Nevertheless, by March 1989, the County discovered that Taylor had accumulated four points on her driving record, due to prior speeding violations. Consequently, her County driving permit was placed on probationary status, and Taylor was warned that she would be terminated if her County driving permit were revoked.

Several years later, on February 2, 1993, Taylor was again arrested for driving while intoxicated and, on May 20, 1993, she was convicted. Pursuant to Md.Code (1977, 1993 Repl. Vol, 1995 Supp.), § 16–402(a) of the Transportation Article ("Transp."), twelve points were assessed on her driving record. Nevertheless, the MVA again allowed Taylor to keep her license, and restricted her driving to employment and educational purposes. *See* Transp. § 16–405.

During a routine check of driving records on July 20, 1993, the County discovered the points that had been assessed against Taylor's license as a result of the alcohol offense, and it revoked her County driving permit. But, for reasons that are not apparent from the record, the County continued to retain Taylor as an employee. In February 1994, however, Taylor was ordered to clear the points from her license within ninety days, which she had no authority to do. Consequently, on May 27, 1994, Eyler sent Taylor a letter terminating her employment, effective the following day. The letter stated, "[t]he ability to drive is essential to satisfactorily perform the job of parks laborer," and added, "Only a temporary accommodation of this requirement can be made for this position. I have made this temporary accommodation for a reasonable period of time."

Taylor filed for unemployment benefits under L.E., Title 8. A claims examiner concluded that "insufficient evidence has been presented to show any misconduct connected with the work." The claims examiner thus allowed Taylor's claim.

The County contested this determination and, on July 15, 1994, an evidentiary hearing was conducted before a hearing examiner. The hearing examiner found that, "as a condition of her employment," Taylor was "required to possess . . . the ability to obtain . . . a Frederick Employee County Permit." The hearing examiner also found that the "claimant became aware of the [C]ounty's regulation that an accumulation of more then [sic] six points on a drivers [sic] record can result in disciplinary action leading to termination of employment." The hearing examiner further noted that, although the claimant had the "legal right" to drive to and from work, she could not drive a vehicle while at work. Therefore, the hearing examiner determined that the County "was justified in discharging the claimant for her inability to continue in her work classification for lack of a valid County drivers [sic] permit. . . ."

Although the hearing examiner concluded that Taylor's conduct constituted "misconduct connected with employment," within the meaning of L.E. § 8–1003(a), the hearing examiner rejected any finding of gross misconduct. The hearing examiner said:

Accordingly, I cannot find that the claimant's violation of the employer's rules concerning driving privileges rises to the level of gross misconduct. . . . But, clearly, the claimant's conduct in driving while intoxicated is a matter which is connected with the work, because she knew or should have know [sic] that the accumulation of driving points could result in termination from employment, and that she would be in violation of the employer's rules and regulations if such would occur.

Taylor was thus denied unemployment benefits for ten weeks.

Both Taylor and the County appealed to the Board. After the Board reviewed the record, it issued an opinion in which it adopted the hearing examiner's findings of fact, but disagreed with the hearing examiner's legal conclusion. The Board determined that Taylor's failure to retain her County driving permit constituted a "constructive voluntary quit" within the

meaning of L.E. § 8–1001(a). Accordingly, the Board disqualified Taylor from receiving benefits.

Taylor then sought judicial review in the circuit court, which held that the evidence was insufficient to support the conclusion that Taylor had voluntarily left her employment. It thus reversed the Board's decision, and remanded the case to the Board for a determination of whether Taylor's actions constituted misconduct under L.E. § 8–1003(a) or gross misconduct under L.E. § 8–1002(a).

## STANDARD OF REVIEW

The standard for our review is established by L.E. § 8–512(d), which states:

In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

In reviewing the decision of an administrative agency, our review is generally limited to a determination of: (1) whether the agency applied the correct principles of law; and (2) whether the agency's findings of fact are supported by substantial evidence. *See Caucus Distributors, Inc. v. Maryland Securities Commissioner,* 320 Md. 313, 323–24, 577 A.2d 783 (1990); *Board of Education of Montgomery County v. Paynter,* 303 Md. 22, 35, 491 A.2d 1186 (1985); *Board of School Commissioners of Baltimore City v. James,* 96 Md. App. 401, 418–19, 625 A.2d 361, *cert. denied sub nom. Davis v. Board of School Commissioners,* 332 Md. 381, 631 A.2d 451 (1993). *See generally Anderson v. Department of Public Safety and Correctional Services,* 330 Md. 187, 210–13, 623 A.2d 198 (1993).

Our review of the Board's findings of fact is deferential. In the absence of fraud, our inquiry is whether the

findings are supported by substantial evidence and are reasonable, not whether they are right. *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 515, 390 A.2d 1119 (1978). We examine the agency's findings of fact to determine whether they are supported by "substantial evidence" in light of the record as a whole—that is, whether a reasoning mind could have made those findings from the evidence adduced. *Singletary v. Maryland State Department of Public Safety and Correctional Services,* 87 Md.App. 405, 416, 589 A.2d 1311 (1991). We will not engage in our own fact finding, however. *Board of Trustees of the Employees' Retirement System of the City of Baltimore v. Novik,* 87 Md.App. 308, 312, 589 A.2d 976 (1991), *aff'd,* 326 Md. 450, 605 A.2d 145 (1992). Instead, the tasks of drawing inferences from the evidence and resolving conflicting evidence are exclusively the province of the Board. *Prince George's Doctors' Hospital, Inc. v. Health Services Cost Review Commission,* 302 Md. 193, 200–02, 486 A.2d 744 (1985). A reviewing court must also take care not to substitute its judgment for the expertise of the Board. *Westinghouse Electric Corp. v. Callahan,* 105 Md.App. 25, 34, 658 A.2d 1112 (1995).

 In contrast, our review of the Board's decisions on issues of law is not deferential. *Columbia Road Citizens' Association v. Montgomery County,* 98 Md.App. 695, 698, 635 A.2d 30 (1994). Thus, "the reviewing court may substitute its judgment for that of the agency." *Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993). On issues of statutory construction, we will afford substantial deference to an agency's construction of a statute that it is charged with administering. *Westinghouse,* 105 Md.App. at 37, 658 A.2d 1112. Nevertheless, an administrative agency is not authorized to disregard the terms of a statute when that statute is clear and unambiguous. *See Sugarloaf Citizens Association v. Northeast Maryland Waste Disposal Authority,* 323 Md. 641, 663 n. 1, 594 A.2d 1115 (1991); *Bosley v. Dorsey,* 191 Md. 229, 239, 60 A.2d 691 (1948); *Baines v. Board of Liquor License Commission-*

*ers for Baltimore City,* 100 Md.App. 136, 141, 640 A.2d 232 (1994).

With these principles in mind, we shall analyze the issues presented.

## *DISCUSSION*

### I.

The Board disqualified Taylor from receiving benefits pursuant to L.E. § 8–1001(a)(1), which states: "An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from voluntarily leaving work without good cause." [3] Yet the Board does not contend that Taylor actually "voluntarily [left] work" or quit. Rather, it contends that, based on her conduct, Taylor essentially put the employer in the position of having to terminate her because, without a County driving permit, she no longer met the criteria for employment. Thus, according to the Board, she "constructively" voluntarily left work due to the drunk driving conviction that resulted in the loss of the County driving permit that she needed for her employment.

We begin our analysis with a discussion of the doctrine of constructive voluntary leaving. It is a theory under which an employee who is actually discharged or terminated by the employer is nonetheless deemed to have "constructively" voluntarily quit.[4] Under the doctrine, the employee's actual intent to terminate the employment is not relevant. The Board apparently first adopted the doctrine in 1984 in *Queen*

---

**3.** At the time of the proceedings below, the statute was denoted simply as § 8–1001(a). In 1995, the General Assembly re-numbered the provision as § 8–1001(a)(1) and added § 8–1001(a)(2), which is not pertinent to this case. 1995 Md.Laws, ch. 578.

**4.** When an employee leaves work voluntarily, he or she is generally not entitled to unemployment benefits. *See, e.g.,* L.E. § 8–1001(a)(1); N.J.Stat.Ann. § 43:21–5(a) (West 1991); Mass.Ann.Laws ch. 151A, § 25(e)(1) (Law.Co-op.Supp.1995); N.Y.Lab.Law § 593(1)(a) (McKinney 1988). *See generally* 81 C.J.S. *Social Security* § 225a (1977).

*v. Maryland Lumber Co.*, No. 910–BR–84 (November 21, 1984).[5] Later, in *Hoffman v. Maryland Car Care*, No. 643–BH–93 (April 13, 1993), the Board described the principle as follows: "[W]hen a claimant has failed to abide by a condition of employment (in this case possession of a valid drivers [sic] license) the absence of which leaves the employer *absolutely no choice* but to terminate the claimant's services, the claimant has 'constructively' voluntarily quit his employment without good cause or valid circumstances." (Emphasis added).

While the states have split on the issue of whether to recognize the doctrine of constructive voluntary leaving, *see generally* 76 Am.Jur.2d *Unemployment Compensation* § 107 (1992); 81 C.J.S. *Social Security* § 225b (1977), the Board's articulation of the principle of constructive voluntary leaving is similar to the expressions of the doctrine by courts of those states that have recognized it. In *Steinberg v. California Unemployment Insurance Appeals Board*, 87 Cal.App.3d 582, 585, 151 Cal.Rptr. 133, 134–35 (1978), for example, California's intermediate appellate court said:

> A claimant is said to have constructively quit his job when, although discharged by the employer, the claimant himself set in motion the chain of events which resulted in the employer's having no choice except to terminate him.
>
> All three of the following elements must be present before it can be said that a claimant has constructively quit his job.
>
> 1. The claimant voluntarily committed an act which
>
> 2. made it impossible for the employer to utilize his services, and
>
> 3. the claimant knew or reasonably should have known the act would jeopardize his job and possibly result in the loss of his employment.

87 Cal.App.3d at 585, 151 Cal.Rptr. at 134–35 (citation and italics omitted).

---

5. The numbers next to Board decisions are case numbers for written decisions of the Board.

The issue is one of first impression in Maryland, although the Board asserts that the Court of Appeals "recognized" the doctrine of constructive voluntary leaving in *Allen v. Core Target City Youth Program,* 275 Md. 69, 338 A.2d 237 (1975). In that case, the Court construed former Art. 95A, § 6(a), the predecessor to L.E. § 8–1001(a)(1).[6] The Board focuses on the following statement in *Allen:*

> [W]e can envision limited circumstances where, although the employee was shown to have been factually and technically discharged, it might be evident that he in fact undertook to terminate the employment relationship and thus be held to have "constructively" voluntarily left his employment. This is particularly true where an employee is shown to have abandoned his employment by pursuing a course of conduct which resulted in his severance from employment.

275 Md. at 81, 338 A.2d 237. This statement is, however, *dictum.* Indeed, on the next page of its opinion, the Court stated that it was merely *assuming* the applicability of the doctrine *without deciding* whether Maryland would recognize it. The Court said: "Assuming that the doctrine of 'constructive voluntary leaving' would be applicable under appropriate circumstances, it is self-evident that the facts in this case do not bring it within that doctrine." *Id.,* 275 Md. at 82–83, 338 A.2d 237.[7]

---

**6.** Former Art. 95A, § 6(a) of the Code provided, in pertinent part, that an individual was disqualified from receiving benefits "[i]f the Executive Director finds that the individual's unemployment is due to his leaving work voluntarily without good cause."

**7.** The Board also asserts that the Court in *Allen* "approv[ed]" the holding of the Michigan Supreme Court in *Echols v. Employment Security Commission,* 380 Mich. 87, 155 N.W.2d 824 (1968), in which the Michigan court held that a taxicab driver had voluntarily quit his employment when he was terminated after his driver's license was suspended for accumulating too many points. Although the *Allen* Court cited and discussed *Echols* in its *dictum* about constructive voluntary leaving, the Court clearly stated in a footnote that it was citing *Echols* and other cases "only as examples of factual situations where the doctrine has been applied without here embracing their holdings." *Allen,* 275 Md. at 81 n. 2, 338 A.2d 237.

 *Dictum* is, of course, worthy of consideration, but it is not binding. In *State v. Wilson,* 106 Md.App. 24, 664 A.2d 1 (1995), Judge Moylan, writing for this Court, stated at the conclusion of an extensive discussion of the differences between *dicta* and holdings: *"[S]tare decisis* is ill-served if readers hang slavishly on every casual or hurried word as if it had bubbled from the earth at Delphi. *Obiter dicta,* if noticed at all, should be taken with a large grain of salt." *Id.,* 106 Md.App. at 39, 664 A.2d 1.

Furthermore, any notion that the *Allen* Court recognized the doctrine of constructive voluntary leaving was put to rest by the Court in *Sinai Hospital of Baltimore, Inc. v. Department of Employment and Training;* 309 Md. 28, 522 A.2d 382 (1987). There, the Court expressly stated that the issue was still open. The Court said: "Whether the doctrine of constructive voluntary leaving is recognized in Maryland has not been decided by this Court." *Id.* at 34, 522 A.2d 382.

This case squarely presents for resolution the question of the viability of the doctrine. There is evidence in the record that Taylor's County driving permit was a condition of her employment, that the County permit was essential to Taylor's ability to work, and she lost this permit through her voluntary act of drinking and driving. There was also testimony that Taylor was terminated because, without her driving permit, she was unable to perform the job for which she was hired. These facts fit within the concept of constructive voluntary leaving as articulated by the Board and the courts of other states. Therefore, we must determine whether the doctrine is encompassed in L.E. § 8–1001(a)(1). In essence, this is an issue of statutory construction.

## II.

 The principles of statutory construction are well settled. The polestar of statutory construction is to ascertain and effectuate the intention of the Legislature. *Jones v. State,* 336 Md. 255, 260, 647 A.2d 1204 (1994); *Motor Vehicle Administration v. Gaddy,* 335 Md. 342, 346, 643 A.2d 442

(1994). In our inquiry, the primary source for determining that intent is the language of the statute. *In re Douglas P.,* 333 Md. 387, 392, 635 A.2d 427 (1994); *State v. Patrick A.,* 312 Md. 482, 487, 540 A.2d 810 (1988); *Comptroller of the Treasury v. Martin G. Imbach Inc.,* 101 Md.App. 138, 144, 643 A.2d 513, *cert. denied,* 336 Md. 593, 650 A.2d 239 (1994). We read the statute in a natural and sensible fashion, assigning its words their ordinary and commonly understood meanings. *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537 (1994); *NCR Corp. v. Comptroller of the Treasury,* 313 Md. 118, 124–25, 544 A.2d 764 (1988).

A litigant who asks us to ignore the plain language of the statute bears an "exceptionally heavy" burden. *Union Bank v. Wolas,* 502 U.S. 151, 156, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991). That party must show that it is "manifest" that the legislature could not possibly have meant what it said in that language, *see State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990); *Privette v. State,* 320 Md. 738, 744, 580 A.2d 188 (1990), or that a natural reading of the statute would lead to an absurd result, *see Thanos v. State,* 332 Md. 511, 525, 632 A.2d 768 (1993); *In re Special Investigation No. 281,* 299 Md. 181, 200, 473 A.2d 1 (1984). Courts are not "at liberty to gather a legislative intention contrary to the plain words of the statute or to insert words to express an intention not shown in the original form." *Allen,* 275 Md. at 77, 338 A.2d 237, citing *Celanese Corp. of America v. Davis,* 186 Md. 463, 47 A.2d 379 (1946).

We also read the language of the statute in the context that it appears, considering surrounding statutes, the statutory scheme as a whole, *see Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870 (1994), and the purpose that the Legislature had in mind in enacting the statute. *Motor Vehicle Administration v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972 (1993); *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590 (1992). Moreover, "when there is no ambiguity or obscurity in the language of a statute, there is no need to look elsewhere to ascertain the intent of the legislative body."

*Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448 (1994). *Accord Harris v. State,* 331 Md. 137, 145–46, 626 A.2d 946 (1993); *Ferguson Trenching Co., Inc. v. Kiehne,* 329 Md. 169, 177, 618 A.2d 735 (1993).

In the context of unemployment insurance law, because of its remedial nature, its provisions are liberally construed in favor of eligibility for benefits. *Sinai Hospital of Baltimore, Inc. v. Department of Employment and Training,* 309 Md. 28, 40, 522 A.2d 382 (1987). Consequently, provisions that disqualify claimants from receiving benefits are construed narrowly. *Id; Taylor v. Department of Employment and Training,* 308 Md. 468, 472, 520 A.2d 379 (1987). As we continue our analysis, we shall apply these principles.

### III.

We turn next to the language of L.E. § 8–1001(a)(1). The provision is relatively straightforward. The statute disqualifies claimants from receiving benefits if their unemployment "results from voluntarily leaving work without good cause." The plain language of the statute suggests that a claimant is disqualified under its terms only when the employee intentionally terminates his or her employment or affirmatively undertakes or elects to do so. *See* THE AMERICAN HERITAGE DICTIONARY at 762 (1983) (defining "voluntary," *inter alia,* as "[a]rising from one's own free will," "acting by choice and without constraint or guarantee of reward," "[n]ot accidental; intentional").

The question is whether an employee, who is involuntarily discharged by the employer based on the employee's voluntary act, such as driving while intoxicated, has voluntarily quit his or her employment. Clearly, a discharge is not the same thing as a voluntary quit. *See MacFarland v. Unemployment Compensation Board of Review,* 158 Pa.Super. 418, 45 A.2d 423, 425 (1946).

Two decisions of the Court of Appeals support a plain meaning approach to L.E. § 8–1001(a)(1): *Allen v. Core Target City Youth Program, supra,* 275 Md. 69, 338 A.2d 237

which, as we have noted, construed the predecessor to L.E. § 8–1001(a)(1), and *Wills v. Jones*, 340 Md. 480, 667 A.2d 331 (1995), which used *Allen* to construe the term "voluntarily impoverished" in Maryland's child support law, Md.Code Ann., Fam.Law §§ 12–201(b)(2) & 12–204(b) (1991 & Supp.1995).

In *Allen*, the Court held that a teacher who was discharged after she "contumaciously" refused to prepare for courses that she had undertaken to teach had not "voluntarily" left work. The Court recognized that "[t]he term 'leaving work voluntarily' is not anywhere defined in the statute and absent some imperative reason for enlarging its meaning the term 'should be construed as having its ordinary and commonly-accepted meaning.'" *Id.*, 275 Md. at 77, 338 A.2d 237, quoting *Scoville Service, Inc. v. Comptroller*, 269 Md. 390, 395, 306 A.2d 534 (1973). It determined that the "phrase 'leaving work voluntarily' cannot by construction be extended so as to make it applicable to any case which is not shown to be *clearly* within the contemplation of the Legislature." *Allen*, 275 Md. at 78, 338 A.2d 237 (emphasis supplied).

The Court also considered dictionary definitions of the word "voluntary":

"1. Proceeding from the will, or from one's own choice or full consent; produced in or by an act of choice; ... 2. Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself; free ... 3.a. Done by design or intention; intentional; purposed; intended, not accidental ... b. Made or given of one's one free will; ...." [WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE at 2858 (2d ed. 1944) ] "[d]one by design or intention, intentional, purposed, intended, or not accidental ... Intentionally and without coercion" [BLACK'S LAW DICTIONARY at 1746 (Rev. 4th ed. 1968) ]

\* \* \* \* \* \*

"of one's own free will" [WEBSTER'S SEVENTH NEW COLLEGIATE DICTIONARY at 998 (1967) ]

*Id.*, 275 Md. at 78, 338 A.2d 237.

After a brief discussion of the case law from this and other jurisdictions, the Court concluded:

As we see it, the phrase "due to leaving work voluntarily" ... has a plain, definite and sensible meaning, free of ambiguity; it expresses a clear legislative intent that to disqualify a claimant from benefits the evidence must establish that the claimant, by his or her own choice, intentionally, of his or her own free will, terminated the employment. *If an employee is discharged for any reason, other than perhaps for the commission of an act which the employee knowingly intended to result in his discharge, it cannot be said that his or her unemployment was due to "leaving work voluntarily."*

\* \* \* \* \* \*

In this case the record does not establish that the claimant of her own volition and from her own choice undertook to terminate her services. Although it certainly cannot be challenged that her conduct precipitated her severance, based upon the factual findings that she contumaciously refused to prepare herself to perform the duties she had undertaken, the record clearly demonstrates that the employer was the party who elected to and did, in fact, terminate the relationship when she was discharged. She did not quit or otherwise "voluntarily" leave.

In view of the plain meaning of the statutory language, and the clear intention of the Legislature, we cannot conclude, as a matter of law, upon the factual findings made by the referee, as adopted and affirmed by the Board, that the appellant's unemployment was "due to [her] leaving work voluntarily, without good cause." We hold that the factual circumstances resulting in her termination did not bring her case within the provisions of Art. 95A, § 6(a). To construe the statute otherwise would render the distinction maintained by the Legislature between unemployment due to "leaving work voluntarily" and unemployment resulting from discharge as completely meaningless and the Legislature, in our view, did not intend such a result.

*Id.*, 275 Md. at 79–80, 338 A.2d 237 (emphasis added).

The Court of Appeals's recent decision of *Wills v. Jones, supra*, is also instructive. There, the Court construed the

term "voluntarily impoverished" in Maryland's child support law, Md.Code Ann., Fam.Law §§ 12–201(b)(2) & 12–204(b) (1991 & Supp.1995). In interpreting the word "voluntarily," the Court discussed *Allen* at length and stated, "Our inquiry here is similar to that made in the unemployment context." *Wills,* 340 Md. at 496, 667 A.2d 331. The Court held in *Wills* that a father who was incarcerated was not "voluntarily impoverished" unless he committed the crime with the intent of going to prison to become impoverished. *Id.,* 340 Md. at 497, 667 A.2d 331.

It is salient that, in *Wills,* the Court distinguished the intent to become impoverished from the intent to commit the act that necessarily resulted in impoverishment. Thus, the Court rejected the mother's claim that the father had voluntarily impoverished himself because he purposely committed a criminal act that resulted in his impoverishment: "The contention that Jones's incarceration and subsequent impoverishment should be considered 'voluntary' because he made the free and conscious choice to commit a crime stretches the meaning of the word beyond its acceptable boundaries. Jones's incarceration can only be said to be 'voluntary' if it was an intended result." *Id.,* 340 Md. at 496, 667 A.2d 331.

The Board attempts to rely on a "foreseeability" argument to support its view that this case is governed by the doctrine of constructive voluntary quit. It argues that, although Taylor "may not have intended the ultimate consequences of her decision to drive drunk," her conduct was tantamount to a voluntary quit because "it was reasonably foreseeable that her decision to engage in this conduct would result in a conviction, the accumulation of 12 points on her driving record, and the loss of the County driving permit." This is a mirror image of an argument that the Court of Appeals also rejected in *Wills.* Rejecting as "without merit" the child support obligee's contention that an incarcerated obligor had "voluntarily" impoverished himself because it was foreseeable that he would be imprisoned if he committed a crime, the Court said: "[T]he foreseeability of an action's possible consequences is not suffi-

cient to conclude that the actor brought those consequences about 'voluntarily.'" *Id.,* 340 Md. at 496, 667 A.2d 331.

The structure of the Maryland unemployment insurance law also supports our conclusion that the doctrine of constructive voluntary leaving is not embodied in the statutory scheme. The doctrine denies benefits to claimants because of improper conduct on their part. But the Code *already has* provisions that disqualify claimants because of their misdeeds. Specifically, L.E. § 8–1002 provides a total disqualification for "gross misconduct," [8] L.E. § 8–1002.1 provides a total disqualification for "aggravated misconduct," [9] and L.E. § 8–1003 provides a partial disqualification for "misconduct." [10] The General As-

---

**8.** L.E. 8–1002(a) states:

*"Gross misconduct" defined.—In this section "gross misconduct":*
 (1) means conduct of an employee that is:
 (i) deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or
 (ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations; and
 (2) does not include:
 (i) aggravated misconduct, as defined under § 8–1002.1 of this subtitle; or
 (ii) other misconduct, as defined under § 8–1003 of this subtitle.

**9.** L.E. § 8–1002.1(a) reads:

*"Aggravated misconduct" defined.—*(1) In this section, "aggravated misconduct" means behavior committed with actual malice and deliberate disregard for the property, safety, or life of others that:
 (i) affects the employer, fellow employees, subcontractors, invitees of the employer, members of the public, or the ultimate consumer of the employer's product or services; and
 (ii) consists of either physical assault or property loss or damage so serious that the penalties of misconduct or gross misconduct are not sufficient.
 (2) In this section, "aggravated misconduct" does not include:
 (i) gross misconduct, as defined under § 8–1002 of this title; or
 (ii) misconduct, as defined under § 8–1003 of this title.

**10.** L.E. § 8–1003(a) provides:

*Grounds for disqualification.—*An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not:

sembly's enactment of statutes to disqualify claimants because of their conduct indicates that it considered the question of what behavior warrants a sanction and drafted the statutory scheme accordingly. *See Allen*, 275 Md. at 80, 338 A.2d 237. Adding a new disqualification provision would interfere with the carefully crafted provisions of the Code by creating a "hybrid" ground for disqualification that would lie somewhere between the "voluntarily leaving work" provision and the "misconduct" provisions.

The foregoing cases, coupled with the plain and ordinary meaning of the term "voluntary" and the structure of the statutory scheme, lead inexorably to the conclusion that the statute disqualifies persons who depart their employment by their own free choice; it does not disqualify persons who commit a voluntary antecedent act that eventually results in discharge. Instead, the issue of whether an employee has "voluntarily le[ft] work" within the meaning of L.E. § 8–1001(a)(1) hinges on the employee's *intent.*

We conclude that it is a necessary element of "voluntarily leaving work" that the employee have the *intent* to terminate the employment relationship voluntarily. *Swanson v. State*, 114 Idaho 607, 759 P.2d 898, 900 (1988); *Coates v. Bingham Mechanical & Metal Products, Inc.*, 96 Idaho 606, 533 P.2d 595, 597 (1975). *See Gaspro, Limited v. Commission of Labor and Indus. Relations*, 46 Haw. 164, 377 P.2d 932, 936 (1962) (leaving work voluntarily means "the volitional severance of the employment relation by a worker"); *Kitchen v. G.R. Herberger's, Inc.*, 262 Minn. 135, 114 N.W.2d 64, 67 (1962) (voluntary unemployment requires "some act of the employee acquiescing in the unemployment" [quotation omitted] ). Thus, in order to establish that a claimant voluntarily left work within the meaning of L.E. § 8–1001(a)(1), it must be shown that the employee intentionally, purposely, or by his or her own choice or will, terminated the employment or, based

(1) aggravated misconduct, under § 8–1002.1 of this subtitle; or

(2) gross misconduct[,] under § 8–1002 of this subtitle.

on the *Allen* Court's *dictum*, that the employee committed an act that the employee "knowingly intended" to cause a discharge. Thus, it is the claimant's *intent* to become unemployed that is critical, and not the claimant's intent to commit a particular act that culminates in discharge. This differs markedly from the doctrine of "constructive voluntary leaving," which, as we observed earlier, is a precisely-defined concept, with respect to which the claimant's intent to leave employment is irrelevant. *Ante,* at 263–264.

We recognize, however, that an employee's conduct, both verbal and non-verbal, may, under some circumstances, constitute a voluntary quit, even if the employee does not expressly terminate the employment. Thus, it is not necessary for the employee actually to say, "I quit," or words to that effect, in order to be deemed to have voluntarily left work. What is critical, however, is that the employee's conduct must demonstrate the *intent* to quit voluntarily. Therefore, if an employee is to be deemed to have voluntarily left work based on his or her non-verbal conduct, it must be established that the employee engaged in the conduct with the *intent* to terminate the employment relationship.

A claimant's intent or "state of mind is a factual issue for the Board to resolve." *Dep't. of Economic and Employment Develop. v. Hager,* 96 Md.App. 362, 371 (1993). We acknowledge, of course, that one's intent cannot be proven directly. *Id.* Rather, "[t]he matter is determined by drawing reasonable inferences from admitted conduct." *Id.* In *Hager,* the employee's "adamant refusal to accept a [shift] reassignment," 96 Md.App. at 371, 625 A.2d 342, without adequate explanation, culminated in his termination. Based on the facts and inferences drawn from the facts, we upheld the Board's conclusion that the claimant's conduct was deliberate and willful, and thus constituted gross misconduct within the meaning of L.E. § 8–1002(a).

In this case, however, the Board did not make any findings concerning appellee's intent to terminate employment.[11] Rather, the Board, in adopting the hearing examiner's findings, determined only that the claimant "knew or should have known" that an accumulation of points would constitute a violation of the employer's rules and *"could"* result in the discharge. That the employee *could* be fired does not mean that she *would* be fired. Indeed, the hearing examiner found that the employee was permitted to work for one year following her alcohol-related driving offense.

The case of *Maryland Employment Security Board v. Poorbaugh*, 195 Md. 197, 200, 72 A.2d 753 (1950), illustrates the point. The Court held that a Board finding that the claimant had voluntarily left work was supported by evidence to the effect that the claimant stayed home from work because it was too cold, was warned by the employer to come back to work the following day or not to come back at all, and then did not appear back at work until four months later. Obviously, it could be found from those facts that the claimant voluntarily abandoned his employment. *Compare Wickey v. Employment Security Commission*, 369 Mich. 487, 120 N.W.2d 181 (1963) (sailor discharged after he missed a ship's sailing because he was watching a movie; *held*, sailor had not voluntarily quit).

We also find unpersuasive two "public policy" arguments that the Board proffers in support of its position. First, the Board argues that the doctrine of constructive voluntary leaving is an extension of the policy of the General Assembly articulated in L.E. § 8–102, the "legislative findings and policy" statute of the unemployment insurance code. In § 8–102, the General Assembly declared that *"involuntary* unemployment" was a menace that the law sought to combat, and that

---

**11.** Interestingly, on facts far more compelling than those present here, neither the Board nor the Court in *Hager* found a constructive voluntary quit or a voluntary quit. Yet the employee there was described as "unyielding" in twice refusing to accept reassignment, gave no meaningful explanation for his conduct, was then warned that he could be fired, and nonetheless "impertinently and contumaciously retorted: 'You do what you have to do.' " *Id.*, 96 Md.App. at 372, 625 A.2d 342. Even then, he was given a day to reconsider, was again asked to accept the reassignment, and flatly refused.

the Legislature was establishing a system of aid "for the benefit of individuals unemployed *through no fault of their own.*" (Emphasis added). The Board claims that, because Taylor was at "fault" for her unemployment because of her voluntary decision to drink and drive and the resulting loss of her County driver's license, she is not entitled to share in the benefits from this scheme.

This, too, is an argument that the Court of Appeals has consistently rejected. The Court has held that, although the "no fault of their own" language of L.E. § 8–102(c) is a "guide for the interpretation and application" of the Code, *see* L.E. § 8–102(a); *Celanese Corp. of America v. Davis,* 186 Md. 463, 466–67, 47 A.2d 379 (1946), the language of L.E. § 8–102(c) does not create a separate ground for disqualification due to the "fault" of the claimant. *MEMCO v. Maryland Employment Security Administration,* 280 Md. 536, 548, 375 A.2d 1086 (1977); *Fino v. Maryland Employment Security Board,* 218 Md. 504, 507, 147 A.2d 738 (1959); *Tucker v. American Smelting & Refining Co.,* 189 Md. 250, 257–58, 55 A.2d 692 (1947). Instead, only the specific grounds for disqualification enumerated in the statutory scheme may be employed to deny a claimant's entitlement to benefits. *See MEMCO,* 280 Md. at 548, 375 A.2d 1086.

It is thus the specific provisions of L.E. § 8–1001(a)(1) that we must consider to evaluate the Board's contention. Because the doctrine of constructive voluntary leaving is not encompassed in the language of L.E. § 8–1001(a)(1), or any other provision, claimants cannot be denied benefits on the basis of that doctrine, regardless of their "fault." *See Snyder v. State,* 189 Md. 167, 170, 55 A.2d 485 (1947) (courts must determine legislative intent from the language of the statute at issue, and not from any general statement of policy). "If there is incongruity between the 'general policy' [provision] and the result of particular provisions in [the disqualification statute at issue], the incongruity may be eliminated only by the Legislature." *Tucker,* 189 Md. at 258, 55 A.2d 692.

Second, the Board also contends that, as a matter of policy, awarding benefits to Taylor would impose "an unjust burden" on the County by forcing the County to pay Taylor unemployment compensation, in addition to bearing the cost of paying her replacement.[12] The Board argues that "there is an inherent inequity" if the County is required to bear this double cost, because Taylor's unemployment resulted from her decision to drink and drive—a voluntary, illegal act over which the County had no control. *Id.*

The problem with the argument is that the Board is directing it to the wrong branch of government. The statute simply does not admit to an interpretation allowing disqualification for claimants who are discharged because of the voluntary commission of an act that triggers discharge. Recognizing the doctrine of constructive voluntary leaving would require us to rewrite the statute to add a new disqualification provision that the General Assembly did not see fit to include. It is the function of the General Assembly to address the policy issues proffered by appellant and determine whether to adopt the doctrine of constructive voluntary leaving. *See, e.g.,* Wis.Stat. Ann. § 108.04(1)(f) (West 1988 & Supp.1995) (employee disqualified if a license that the employee is "required by law to have ... to perform his or her customary work" was suspended, revoked, or not renewed due to the employee's own fault).

We must view the law as it is, and not as we might wish it to be. *McCance v. Lindau,* 63 Md.App. 504, 512, 492 A.2d 1352 (1985). *See Amalgamated Casualty Insurance Co. v. Helms,* 239 Md. 529, 534–35, 212 A.2d 311 (1965) ("To supply omissions" in a statute "transcends the judicial function," quoting *Iselin v. United States,* 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566 (1926) (Brandeis, J.)); *Gregg v. Gregg,* 199 Md. 662, 668, 87 A.2d 581 (1952). "[W]here

---

12. As a governmental entity, the County has the option, under L.E. § 8–616(c), of making an "election" to reimburse the Unemployment Insurance Fund, on a one-to-one basis, for benefits paid to its former employees. The Board has not informed us in its brief, and there is no indication in the record, as to whether the County has made this election.

statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, courts are not at liberty to disregard the natural import of words with a view towards making the statute express an intention which is different from its plain meaning." *Fikar v. Montgomery County*, 333 Md. 430, 434–35, 635 A.2d 977 (1994) (internal quotations omitted). In this case, the applicable statute and the entire statutory scheme are clear; adopting the principle of constructive voluntary leaving would cross the proper boundaries of judicial decision-making and would constitute judicial law-making. *See Todd v. Weikle*, 36 Md.App. 663, 682, 376 A.2d 104 (1977) ("it is not the function of an appellate court to rewrite a statutory provision"). *See also Fairbanks v. McCarter*, 330 Md. 39, 47, 622 A.2d 121 (1993) ("we will not inferentially manufacture additional components of the statute that do not exist"). This we decline to do.

For the foregoing reasons, we decline the Board's invitation to rewrite L.E. § 8–1001(a)(1) by judicial fiat. Because of the unambiguous statutory language, the policy of construing disqualification provisions narrowly, and considerations concerning the proper scope of judicial functions, we hold that the doctrine of constructive voluntary leaving does not apply in Maryland.

Cases from other jurisdictions support our conclusion that L.E. § 8–1001(a)(1) does not embody the doctrine of constructive voluntary leaving. *See Brousseau v. Maine Employment Security Commission*, 470 A.2d 327 (Me.1984); *Lewis v. Administrator, Unemployment Compensation Act*, 39 Conn. Supp. 371, 465 A.2d 340 (1983); *Przekaza v. Department of Employment Security*, 136 Vt. 355, 392 A.2d 421 (1978). Each of these cases rejects the doctrine of constructive voluntary leaving, based on the clarity of the language of the voluntarily-leaving-work statutes in their jurisdictions and the policy in favor of eligibility for benefits. In *Przekaza*, the Vermont Supreme Court, after noting that that state's unemployment insurance scheme only allowed disqualification in three instances (voluntarily leaving work without good cause, discharge for gross misconduct connected with the work, and

failure to apply for or accept suitable work), stated: "The defendant asks us in effect to rewrite the statute by adding a fourth instance of disqualification, where an employee has been discharged for misconduct *not* connected with his work. This we will not do . . . ." 392 A.2d at 422 (emphasis in original).

In *Lewis,* the Appellate Session of the Connecticut Superior Court stated:

> Where the language of a statute is plain and unambiguous, the intent of the legislature must be derived from that statute. This court cannot, by construction, read into such a statute provisions which are not clearly stated. The defendant's interpretation of [the voluntarily-leaving-work statute] would have us do just that. Moreover, it would contravene the clearly remedial purpose of the Unemployment Compensation Act.

465 A.2d at 341 (citations omitted).

What the Supreme Judicial Court of Maine stated in *Brousseau* is particularly cogent:

> The term "voluntarily" is not defined in the Act, nor is there any reference to the doctrine of "constructive voluntary quit" or "constructive resignation." Words which are not expressly defined in the applicable statute must be accorded their plain and common meaning and should be construed according to their natural import. Therefore, in the context of [the voluntarily-leaving-work statute], an individual leaves work "voluntarily" only when freely making an affirmative choice to do so. The clear import of the statute is that it is the intentional act of leaving employment rather than the deliberate commission of an antecedent act which disqualifies an individual from eligibility for benefits. To read the doctrine of constructive voluntary quit or constructive resignation into [the statute] is to overstep the bounds of administrative construction and usurp the legislative function.

470 A.2d at 330.

We recognize that other jurisdictions have held that employees who are discharged after they lose, through their miscon-

duct, a driver's license that they must have in order to work are deemed to have "voluntarily quit" within the meaning of those states' versions of L.E. § 8–1001(a)(1). *See, e.g., In re Paladino,* 202 A.D.2d 932, 609 N.Y.S.2d 694 (1994); *In re Moulton,* 198 A.D.2d 595, 603 N.Y.S.2d 240 (1993); *Yardville Supply Co. v. Board of Review, Department of Labor,* 114 N.J. 371, 554 A.2d 1337 (1989); *Olmeda v. Director of the Division of Employment Security,* 394 Mass. 1002, 475 N.E.2d 1216 (1985); *Donahue v. Catherwood,* 33 A.D.2d 848, 305 N.Y.S.2d 827 (1969); *Echols v. Michigan Employment Security Commission,* 380 Mich. 87, 155 N.W.2d 824 (1968). But we find the reasoning of the courts of Vermont, Connecticut, and Maine more persuasive.

In our view, the decisions upholding constructive voluntary leaving are flawed to the extent that they extend beyond the plain language of the particular statutes, and impose a disqualification provision that is not there. We agree with the dissent in the New Jersey Supreme Court's decision in *Yardville Supply Co., supra,* a case involving a truck driver terminated after his driver's license was suspended due to a drunk driving conviction:

> I hold no brief for drunk drivers. But as judges we do not have the power to punish their conduct more than has the Legislature. To say that this driver "quit" work is to say that words mean what we want them to mean.... Drunk driving is an abhorrent social malady. But courts are expected to apply legislative policy, not enact it.

554 A.2d at 1340, 1341.

Finally, the Board also cites several cases from Pennsylvania that held that employees who needed to drive as part of their jobs, and who were discharged after their licenses were suspended or revoked, were ineligible for unemployment benefits. *See Hine v. Unemployment Compensation Board of Review,* 103 Pa.Cmwlth. 267, 520 A.2d 102 (1987); *Corbacio v. Unemployment Compensation Board of Review,* 78 Pa. Cmwlth. 70, 466 A.2d 1117 (1983); *Varmecky v. Unemployment Compensation Board of Review,* 60 Pa.Cmwlth. 640, 432

A.2d 635 (1981); *Huff v. Unemployment Compensation Board of Review,* 40 Pa.Cmwlth. 11, 396 A.2d 94 (1978), *aff'd per curiam* 487 Pa. 448, 409 A.2d 854 (1980). We decline to follow these cases for a different reason. In Pennsylvania, the "legislative findings and policy" statute of their unemployment insurance scheme, Pa.Stat.Ann. tit. 43, § 752 (1992), stating that the policy of the act is to aid individuals "unemployed through no fault of their own," has been held to be a substantive ground for disqualifying claimants who were at "fault" for their unemployment. *See Strokes v. Unemployment Compensation Board of Review,* 29 Pa.Cmwlth. 584, 372 A.2d 485, 486 n. 1 (1977). None of the Pennsylvania cases cited by appellant held that the claimants had voluntarily quit their employment; instead, each of them held that the claimants were at "fault" for their discharges and were ineligible on that independent ground. Because, as we stated earlier, the legislative findings and policy statute of the Maryland unemployment insurance act, L.E. § 8–102, is not a substantive ground for disqualification, *see MEMCO v. Maryland Employment Security Administration, supra,* 280 Md. at 548, 375 A.2d 1086, these Pennsylvania cases are not apposite. In fact, a Pennsylvania court rejected the doctrine of constructive voluntary leaving long ago. *See MacFarland v. Unemployment Compensation Board of Review,* 158 Pa.Super. 418, 45 A.2d 423 (1946).

### IV.

In the wake of the preceding discussion, we now apply L.E. § 8–1001(a)(1) to the facts of the case at bar. In order to sustain the Board's determination that Taylor "voluntarily le[ft] work," the record must contain evidence that is sufficient to allow a reasoning mind to conclude that Taylor intentionally, or by her own choice or will, terminated her employment. The facts are virtually undisputed, and it is clear that the record is devoid of any evidence that Taylor intentionally left her job.

Taylor did not quit or otherwise undertake to terminate her employment; she was fired. The dismissal letter from Eyler

states in its first paragraph, "because you have more than 6 points assessed against your State drivers [sic] license you will be *terminated* on 5/28/94 from your position as Park Laborer," and says in its last paragraph, "you are *dismissed* from employment effective May 28, 1994." (Emphasis added). Eyler testified that Taylor had been terminated and had not quit.[13] Taylor also testified that she would still be at her job if she had not been terminated.[14] Thus, the only rational conclusion from the evidence in the record is that Taylor was discharged. Furthermore, no reasonable inference can be made from the evidence that Taylor committed the act of drunken driving with the *intent* of terminating her employment with the County. In fact, the Board appears to concede that point in its brief.[15]

Accordingly, because there is no evidence that Taylor intentionally and voluntarily relinquished her work, and all the evidence indicates that she was discharged, we conclude that the Board's determination that appellee voluntarily left her work, within the meaning of L.E. § 8–1001(a)(1), is not supported by substantial evidence. Even though Taylor's act of drinking and driving may have been voluntary, there is nothing in the record to suggest that she did so with the intention of being terminated. Therefore, the circuit court was correct in reversing the decision of the Board, and remanding the case for the Board to determine whether Taylor is disqualified from receiving benefits for misconduct connected with her work, under L.E. § 8–1003, or gross misconduct, under L.E. § 8–

13. [FREDERICK COUNTY'S COUNSEL]: Going back to May 28th of '94, did Ms. Taylor quit or was she discharged?
MR. EYLER: She was dismissed.

14. [APPELLEE'S COUNSEL]: Had you not been terminated from your job, would you still be working there?
MS. TAYLOR: Yes.

15. As we have suggested, in an appropriate case, the evidence may support a conclusion that an employee's conduct in drinking and driving constitutes a voluntary quit within the meaning of L.E. § 8–1001(a)(1). But the Board must find, based on the evidence, that the employee engaged in the act of drinking and driving with the *intent* of terminating the employment relationship.

1002. *See Allen,* 275 Md. at 87, 338 A.2d 237. We express no opinion on whether her conduct amounts to misconduct or gross misconduct.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY AFFIRMED. CASE REMANDED TO CIRCUIT COURT WITH INSTRUCTIONS TO REMAND TO THE BOARD OF APPEALS FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPEAL OF THE BOARD OF COUNTY COMMISSIONERS OF FREDERICK COUNTY DISMISSED.**

**COSTS TO BE PAID BY APPELLANT.**