700 A.2d 860

Terry WISNIEWSKI

v.

**DEPARTMENT OF LABOR, LICENSING AND REGULATION.**

No. 1881, Sept. Term, 1996.

Court of Special Appeals of Maryland.

Sept. 30, 1997.

508

LLewellyn Woolford, Jr., Towson, for appellant.

Andrew D. Auerbach, Asst. Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Submitted before HOLLANDER and SONNER, JJ., and ROBERT F. FISCHER, Judge (retired), Specially Assigned.

Hollander, Judge.

This case arises from a decision denying unemployment insurance benefits to Terry A. Wisniewski, appellant. The Board of Appeals of the Department of Labor, Licensing and Regulation ("the Board"), appellee, concluded, pursuant to Md.Code (1993, 1996 Supp.), § 8–1001 of the Labor and Employment Art. ("L.E."), that appellant was ineligible for benefits because she voluntarily quit her employment as a bartender, without good cause or valid circumstance. Appellant sought review of the Board's adverse decision in the Circuit Court for Baltimore County, which also affirmed. She has

timely noted her appeal and presents the following issues for our review, which we have reordered:

1. Did the employer fail to meet its burden of showing by substantial evidence that Ms. Wisniewski voluntarily quit without good cause or valid circumstances?

2. Did the hearing examiner violate his duty to inquire into all of the relevant facts and fully develop the record?

3. Did the Board of Appeals act arbitrarily and capriciously when it refused to reopen Ms. Wisniewski's case?

We are of the view that the Board had substantial evidence before it from which it could reasonably conclude that appellant voluntarily quit her employment without good cause or valid circumstances. Further, we conclude that the Hearing Examiner adequately inquired into the facts of the case, consistent with his duty. We are also satisfied that the Board did not abuse its discretion in declining to reopen appellant's case. Therefore, we shall affirm.

## Factual Background

Janet Ewing ("Ms.Ewing") and Ron Ewing ("Mr.Ewing") owned J.F. Ewing, Inc. (the "Employer"), which operated a bar and restaurant called Steamers. Appellant worked at Steamers from October 1994 to August 4, 1995.

On August 27, 1995, appellant filed a claim for unemployment insurance benefits with the Maryland Department of Economic and Employment Development ("DEED").[1] She contended that her employer placed her on a leave of absence because she had become pregnant and was unable to tend bar for "fear [of] getting hurt," even though she was otherwise able to work. When Mr. Ewing told appellant that he did not have any other position for her, she "stated O.K." In its response to the claim, the Employer contended that appellant quit her employment due to the pregnancy, and did not

---

1. Effective July 1, 1995, the Board was transferred from DEED to the Department of Labor, Licensing and Regulation. 1995 Md. Laws, ch. 120, § 2. COMAR, Title 24, Subtitle 2, Unemployment Insurance, was recodified to Title 9, Subtitle 32.

provide "a doctor's verification." Moreover, the Employer asserted that appellant declined its offer to work two nights a week managing the bar, because she claimed she could not be on her feet.

The claims examiner found:

THE CLAIMANT QUIT EMPLOYMENT WITH J R EW-ING INC. ON 080595 BECAUSE THE CLAIMAN [sic] FELT SHE COULD NO LONGER HANDLE HER JOB DUTIES AS A BARTENDER DUE TO HEALTH REA-SON CONNECTED WITH HER PREGNANCY. IN-SUFFICIENT INFORMATION HAS BEEN PRESENT-ED TO PROVE THAT THE QUIT WAS EITHER WITH GOOD CAUSE OR DUE TO A VALID CIRCUM-STANCE. THEREFORE, IT IS DETERMINED THAT THE CLAIMANT VOLUNTARILY QUIT WITHOUT GOOD CAUSE WITHIN THE MEANING OF SECTION 8–1001 OF THE MARYLAND UNEMPLOYMENT IN-SURANCE LAW.

After appellant appealed this decision, an administrative hearing was held on October 3, 1995, at which neither party was represented by counsel. Both parties received written notice advising them of the hearing, which contained the following information on the front of the form: "This hearing is the last step at which either the claimant or the employer has the absolute right to present evidence. The decision will be made on the evidence presented." The reverse side of the notice further stated, in pertinent part:

*The Hearing Examiner will try to develop all of the facts of this case in order to give a fair hearing to all parties, but the Hearing Examiner will not conduct an investigation, contact witnesses not brought to the hearing or obtain documents which are not brought into the hearing by the parties.*

\* \* \* \*

*A party may be represented by an attorney, or other authorized agent. However, they are responsible for any*

*cost incurred. Attorneys representing a claimant may not charge more than the fee approved by the Board of Appeals.*

\* \* \* \*

*Each party should arrange for all necessary witnesses to attend the hearing, and for all necessary documents to be presented at the hearing. If witnesses will not appear or documents will not be produced voluntarily, you may request a subpoena from the Appeals Division.*

At the hearing, it was uncontested that appellant began working at Steamers in October 1994 as a bartender. Although appellant primarily worked as a bartender, she also managed the restaurant in the absence of the Ewings. Appellant became pregnant in the spring of 1995, and notified the Ewings that, because of health concerns related to her pregnancy, she would be unable to continue to tend bar.

Appellant testified that she and the Ewings mutually agreed that she would cease bartending duties and that, after a two-week vacation from August 5th to August 18th, she would return to work as a hostess, two nights per week. Appellant also testified:

> I went back periodically to see when I would start hostessing. And a couple of times I was——well, Ron kind of didn't want to talk about it. . . . And then they changed their mind cause they just couldn't afford it. That's what I was told, when I had went and discussed [employment] the last time.

Appellant explained that, both during her vacation and immediately afterward, she repeatedly attempted to talk to Mr. Ewing about being placed on the work schedule. She also testified that around August 18th, she applied for food stamps, and went to the restaurant after August 18th to have papers signed for her food stamp application.[2]

Ms. Ewing was the sole witness for the Employer. She testified that appellant notified them that her last manage-

---

2. Apparently, appellant was not eligible for food stamps.

ment shift would be July 3, 1995. She also testified that appellant continued to tend bar two nights per week and, about two weeks prior to August 5th, "she gave us notice that that would be her last bartending shift." [3] According to Ms. Ewing, appellant telephoned the Ewings on three occasions, and during each of those calls they made appointments to meet with appellant, but appellant "did not show up" for any of those appointments. She further testified:

Terry could not give us an answer. She was offered management shift. She was offered two evenings per week. And, prior to her leaving as a bar tender [sic] she refused to do any management shift. She said, the bar tending's too much of a strain on her physically. And I can understand that. And we were willing to give her [a] management position, which I thought was less demanding on her physically. And she did not want to do that either.

Appellant vigorously contested Ms. Ewing's version of events, denying that she quit and asserting, *inter alia*, "I never gave them notice." After Ms. Ewing testified, appellant submitted an affidavit from a patron of the restaurant, which she had earlier declined to offer in evidence because it would not remain confidential. The affidavit stated:

This is to clarify, I Diana Sincavage, was present when Terry Wisniewski discussed keeping her managing and hostess position for Ron and Janet Ewing, since physically she could not continue her bartending duties. Their response was favorable and to go into effect following her vacation.

On October 20, 1995, the Hearing Examiner issued his findings of fact, which were in accord with Ms. Ewing's version of events. The Hearing Examiner determined that the claimant gave notice that her last day of work in "any capacity" would be August 4, 1995, and that she would return from vacation on August 18, 1995. Upon returning from her

---

3. Appellant's last day of work was actually August 4, 1995, because she traded shifts with another employee.

vacation, he found that appellant "made no direct effort to contact the employer, thought [sic] the employer tried on three occasions to set up and [sic] appointment with her to discuss her future employment." In addition, the Hearing Examiner noted that, at about the time she returned from vacation, appellant applied for food stamps. As appellant had conceded, the Hearing Examiner found that appellant was able and available to work. Based on his findings, the Hearing Examiner concluded:

> The evidence in this case makes clear that this was a voluntary quit. The burden of proof is upon the claimant to show that there was a voluntary quit with good cause or valid circumstances. That burden has not been met. The result can only then be a finding of a voluntary quit without good cause or under valid circumstances.

Therefore, he affirmed the claims examiner's decision denying unemployment compensation to appellant.

Thereafter, appellant appealed to the Board. On December 7, 1995, the Board denied appellant's petition for review, without a hearing. Subsequently, appellant obtained counsel and, on December 14, 1995, she filed a detailed request with the Board asking it to reconsider her case. In support of the request, she attached affidavits from three witnesses who had not earlier testified, but all averred that they would testify if another hearing were scheduled. Her counsel also sought to identify numerous errors in the findings of fact made by the Hearing Examiner. Additionally, counsel commented on Mr. Ewing's absence from the hearing. Counsel also noted that appellant attended a Steamers employee party on August 21, 1995, which the Ewings also attended, thereby irrefutably disproving their claim that they had no contact with appellant after she returned from vacation on August 18, 1995.

By letter dated December 18, 1995, the Board declined to reopen the case. The letter stated, in pertinent part: "The Board rarely reopens a case, and usually does so only because of clerical error, calculation error or some other obvious error."

Appellant then sought review in the circuit court. In its opinion filed October 16, 1996, affirming the Board, the court said:

> This Court agrees with the decision of the Hearing Examiner and, consequently, the Board of Appeals, that substantial evidence exists to support the conclusion that Ms. Wisniewski had a job that she chose not to return to after she took her requested vacation. Consequently, it is not unreasonable that claimant voluntarily quit her job even though evidence exists that she placed three phone calls to her employer. Similarly, evidence that Ms. Wisniewski's employer offered her work supports the determination that claimant voluntarily quit her job.

## Discussion

### I.

An applicant who is denied unemployment insurance benefits by the Board may seek review in the circuit court. L.E. § 8–512 (Supp.1994) provides, in pertinent part:

**Judicial review.**

(a) *In general.*—(1) Any party who is aggrieved by a final decision of the Board of Appeals may appeal the decision to a circuit court.

\* \* \* \*

(d) *Scope of review.*—In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

■ This Court's "role in reviewing an administrative decision 'is precisely the same as that of the circuit court.' This means we must review the administrative decision itself."

*Westinghouse Elec. Corp. v. Callahan,* 105 Md.App. 25, 32, 658 A.2d 1112 (1995) (citations omitted) (quoting *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)); *see Baltimore Lutheran High Sch. Ass'n v. Employment Sec. Admin.,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Department of Economic and Employment Dev. v. Lilley,* 106 Md.App. 744, 753, 666 A.2d 921 (1995); *Relay Improvement Ass'n v. Sycamore Realty Co.,* 105 Md. App. 701, 713, 661 A.2d 182 (1995), *aff'd,* 344 Md. 57, 684 A.2d 1331 (1996); *Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994).

 "Judicial review of administrative agency action is narrow." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 576, 650 A.2d 226 (1994). An administrative agency's decision is *prima facie* correct, and an appellate court must view that decision in the light most favorable to the agency. *Board of Educ. v. Paynter,* 303 Md. 22, 35–36, 491 A.2d 1186 (1985); *Department of Economic and Employment Dev. v. Propper,* 108 Md.App. 595, 604, 673 A.2d 713 (1996). Our review of the decision of an administrative agency is generally limited to a determination of: (1) whether the agency applied the correct principles of law; and (2) whether the agency's findings of fact are supported by substantial evidence. *Department of Economic and Employment Dev. v. Taylor,* 108 Md.App. 250, 262, 671 A.2d 523 (1996), *aff'd per curiam,* 344 Md. 687, 690 A.2d 508 (1997); *Propper,* 108 Md.App. at 603–04, 673 A.2d 713; *see also Caucus Distribs. Inc. v. Maryland Sec. Comm'r,* 320 Md. 313, 323–24, 577 A.2d 783 (1990); *Paynter,* 303 Md. at 35, 491 A.2d 1186; *Board of Sch. Comm'rs v. James,* 96 Md.App. 401, 418–19, 625 A.2d 361, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993).

 Our review of the Board's findings of fact is deferential. We examine the agency's findings of fact merely to determine whether they are supported by "substantial evidence" in light of the record as a whole. "Substantial evidence means more than a 'scintilla of evidence,' such that a

reasonable person could come to more than one conclusion." *Relay Improvement,* 105 Md.App. at 714, 661 A.2d 182; *see Moseman,* 99 Md.App. at 262–63, 636 A.2d 499. The substantial evidence standard, which governs the agency's findings of fact, *see Baltimore Lutheran,* 302 Md. at 662, 490 A.2d 701; *Westinghouse,* 105 Md.App. at 33, 658 A.2d 1112, "is limited to determining whether a reasoning mind could have reached the factual conclusion reached by the agency." *Liberty Nursing Ctr., Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941 (1993); *see also Baltimore Lutheran,* 302 Md. at 662, 490 A.2d 701; *Singletary v. State Dep't of Pub. Safety and Correctional Servs.,* 87 Md.App. 405, 416, 589 A.2d 1311 (1991). Even if the reviewing court could have reached a different result based on the evidence before the agency, we must uphold the agency's determination if it is reasonably supported by the evidence in the record. *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 515–16, 390 A.2d 1119 (1978).

In making this determination, a reviewing court may not substitute its own judgment for the expertise of the agency. *Paynter,* 303 Md. at 35, 491 A.2d 1186; *Propper,* 108 Md.App. at 604, 673 A.2d 713; *Taylor,* 108 Md.App. at 262, 671 A.2d 523; *Eberle v. Baltimore County,* 103 Md.App. 160, 165–66, 652 A.2d 1175 (1995). Nor may the reviewing court engage in its own fact-finding. *Board of Trustees v. Novik,* 87 Md.App. 308, 312, 589 A.2d 976 (1991), *aff'd,* 326 Md. 450, 605 A.2d 145 (1992). Instead, the tasks of drawing inferences from the evidence and resolving conflicts in the evidence are exclusively the function of the Board. *Prince George's Doctors' Hosp., Inc. v. Health Servs. Cost Review Comm'n,* 302 Md. 193, 200–02, 486 A.2d 744 (1985); *Propper,* 108 Md.App. at 603–04, 673 A.2d 713; *Taylor,* 108 Md.App. at 262, 671 A.2d 523. It is "the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences." *Baltimore Lutheran,* 302 Md. at 663, 490 A.2d 701; *see also Propper,* 108 Md.App. at 603–04, 673 A.2d 713.

## II.

Appellant argues that the agency's decision that she voluntarily quit her employment was not supported by substantial evidence. L.E. § 8–1001 provides, in relevant part:

**Voluntarily leaving work.**

(a) *Grounds for disqualification.*—(1) An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from voluntarily leaving work without good cause.

\* \* \* \*

(b) *Finding of good cause.*—The Secretary may find that a cause for voluntarily leaving is good cause only if:

(1) the cause is directly attributable to, arising from, or connected with:

(i) the conditions of employment; or

(ii) the actions of the employing unit; or

(2) an individual:

(i) is laid off from employment through no fault of the individual;

\* \* \* \*

(c) *Valid circumstances.*—(1) A circumstance for voluntarily leaving work is valid only if it is:

(i) a substantial cause that is directly attributable to, arising from, or connected with conditions of employment or actions of the employing unit; or

(ii) of such necessitous or compelling nature that the individual has no reasonable alternative other than leaving the employment.

The statute itself does not define the meaning of "leaving work voluntarily." In interpreting this phrase, the Court of Appeals has explained:

As we see it, the phrase "due to leaving work voluntarily" has a plain, definite and sensible meaning, free of ambiguity; it expresses a clear legislative intent that to disqualify a

claimant from benefits the evidence must establish that the claimant, by his or her own choice, intentionally, of his or her own free will, terminated the employment.

*Allen v. Core Target City Youth Program,* 275 Md. 69, 79, 338 A.2d 237 (1975). Furthermore, we have noted that "[t]he plain language of the statute suggests that a claimant is disqualified under its terms only when the employee intentionally terminates his or her employment or affirmatively undertakes or elects to do so." *Taylor,* 108 Md.App. at 268, 671 A.2d 523.

 The parties do not dispute that, prior to appellant's departure for vacation, they discussed appellant's return to work in a capacity other than bartending. Therefore, they agree that while appellant could not or would not tend bar after August 4, 1995, that was not supposed to be the end of her employment. Although the Employer claims it was willing to allow appellant to work in another capacity, the parties disagree about whether, following her vacation, appellant contacted her employer in an attempt to resume employment. An intentional failure to return to work after vacation would constitute an affirmative act of "voluntarily leaving work". As we noted, only two witnesses testified. Appellant testified that she tried to return to work; the Employer testified that she did not. Ms. Ewing's testimony was the sole basis for the Board's decision.

Ms. Ewing essentially testified that appellant gave notice that her last day of employment as a bartender would be August 5, 1995, and that the Employer offered her hostessing and managerial duties, but that appellant did not follow through in contacting the Ewings in order to return to work. Although Ms. Ewing claimed that appellant called the restaurant and made three appointments to meet with the Ewings after her vacation, Ms. Ewing said appellant did not keep any of those appointments. Appellant claims, however, that she called repeatedly in an effort to resume work. Moreover, appellant points out that Ms. Ewing could not provide dates

for the alleged appointments, nor any documentation of their existence.

The thrust of appellant's argument is that Ms. Ewing's testimony was logically inconsistent, and her "second-hand account [was] plainly inconceivable." In essence, appellant argues that the Employer

> contends that [appellant] repeatedly called [the employer] during her leave solely to schedule appointments she had no intention of attending, and to discuss a job she did not want. She lamely maintains that over the course of those calls [the employee] never replied to the Ewings' offer to resume employment because the telephone was an inadequate means of communication.

According to appellant, it makes no sense for appellant to have called the Employer to schedule an appointment if the only purpose of the appointment was to inform the Employer that appellant would not work. For this reason, appellant suggests that Ms. Ewing's testimony was inherently incredible. Further, because Ms. Ewing's testimony was not entitled to any credence, appellant urges that the Board did not have even a scintilla of evidence on which to base its findings.

 As we observed in Section I, credibility determinations and the inferences to be drawn from the facts are the exclusive province of the Board. Moreover, we must view the Board's decision in the light most favorable to it. In order to prevail, appellant would have to persuade us that no reasonable person could have credited Ms. Ewing's testimony over appellant's. While we may have reached a contrary decision, were we the fact finders, the evidence did not *compel* a contrary result. We conclude that the Board's decision was supported by substantial evidence.

## III.

Appellant argues that the Hearing Examiner had a duty to inquire about all the facts and circumstances surrounding the disputed events, but did not adequately inquire of the witnesses. She contends that one possible explanation for Ms.

Ewing's testimony that appellant made no effort to resume employment was Ms. Ewing's ignorance of appellant's contacts with Mr. Ewing. In this regard, she complains that the Hearing Examiner did not seek to clarify with whom appellant spoke on the occasions that she maintains she returned to Steamers to importune the owners to place her on the work schedule. She also complains that the Hearing Examiner failed to inquire of Ms. Ewing whether she had any knowledge of these visits. Appellant maintains that if the Hearing Examiner had inquired, he would have concluded that Ms. Ewing lacked knowledge of these contacts, and would have discredited those portions of Ms. Ewing's testimony that contradicted appellant's version of events.

Regarding the scope of a Hearing Examiner's duties, L.E. § 8–509(b)(1) states:

[A] hearing examiner ... shall:

(i) give the parties a reasonable opportunity for a fair hearing ...;

(ii) make findings of fact and conclusions of law ...; and;

(iii) on the basis of the findings of fact and conclusions of law, affirm, modify, or reverse a determination or redetermination.

Appellant concedes that no Maryland case is directly on point regarding the precise scope of the Hearing Examiner's duty to develop the facts on behalf of the parties. She cites to case law from a number of other jurisdictions that impose a duty on a referee or hearing examiner to develop all relevant facts and to develop the record fully. *See, e.g., Johnson v. U.S. Textiles Corp.,* 105 N.C.App. 680, 414 S.E.2d 374, 377 (1992) (concluding referee has duty to ask *pro se* claimant the "right questions" necessary to produce evidence relevant to a determination of her claim); *Langlois v. Department of Employment & Training,* 149 Vt. 498, 546 A.2d 1365, 1367 (1988) (concluding referee owes claimant " 'every assistance in presenting his case consistent with the referee's duty to impartially decide the issues' " (*quoting Dague v. Department of*

*Employment Sec.,* 138 Vt. 57, 412 A.2d 706, 707 (1980)));
*Dennis v. Employment Div.,* 302 Or. 160, 728 P.2d 12, 16
(1986) (" [T]he adjudication of unemployment benefits is more
inquisitorial than adversarial.... [T]he referee must seek
out all the relevant facts." (footnote omitted)).

Certainly, unemployment insurance law is remedi-
al in nature, and applicable statutory provisions are liberally
construed in favor of benefits. *Taylor,* 108 Md.App. at 268,
671 A.2d 523. Assuming, *arguendo,* that the Hearing Examin-
er had an affirmative duty to query the parties in order to
elicit all possible relevant evidence, we are satisfied from our
review of the record that the Hearing Examiner fulfilled that
duty, so that the parties were afforded a fair hearing.[4] More-
over, appellant's own testimony is rife with references to both
Mr. and Ms. Ewing. For example, appellant testified, "[a]nd
you know that I sat and talked with *both of you* about it ..."
and *"they* said *they* couldn't give me any hours." (Emphasis
added). Further, the Hearing Examiner's duty does not
relieve the parties of their responsibility to present their own
cases. Here, the parties had ample notice of their responsibil-
ity to obtain and present evidence.

## IV.

Appellant contends that the Board acted arbitrarily and
capriciously when it denied appellant's request to reconsider
her case. The Employer contends that this argument has not
been preserved because appellant did not challenge the
Board's refusal to reopen the case in the circuit court. Md.
Rule 8–131(a); *Hosain v. Malik,* 108 Md.App. 284, 294, 671
A.2d 988 (1996)(en banc). Appellant counters that she argued
generally in the circuit court that the Board had abused its
discretion, and that the issue is therefore preserved. A
review of appellant's memorandum to the circuit court reveals

---

4. Our comments with respect to the issue of the Hearing Examiner's
duty are limited to hearings in regard to unemployment insurance
benefits. Our comments should not be construed to apply to hearings
conducted by the Office of Administrative Hearings.

that appellant challenged only the actions of the Hearing Examiner, and did not even obliquely assign error to the Board's refusal to reopen the case.

Assuming, *arguendo*, that a challenge to the actions of the Hearing Examiner encompasses a challenge to the Board's refusal to reopen the case, we nevertheless conclude that appellant's argument is without merit. We explain.

After the adverse decision of the Hearing Examiner, appellant sought counsel. Counsel for appellant wrote a detailed letter to the Board, with three affidavits attached. These consisted of a second, more detailed affidavit from Ms. Sincavage, as well as affidavits from two Steamers employees, Charles O'Neil and Machele Cooper. These affidavits apparently were submitted in order to rebut the Hearing Examiner's finding that appellant "made no direct effort to contact the employer, thought [sic] the employer tried on three occasions to set up and [sic] appointment with her to discuss her future employment."

Mr. O'Neil's affidavit stated only that he heard appellant and the Ewings discuss plans for her to continue to work before she left for vacation, and thus was not relevant to a contested issue. Ms. Cooper's affidavit simply averred that she saw appellant come into the restaurant and "go into the back office where the owners . . . normally conduct business." She also said that she saw appellant and the Ewings at an employee party on August 21, 1995. This provides no direct evidence that appellant was attempting to resume work, particularly in light of appellant's own testimony that she also went to the restaurant seeking documentation for a food stamps application.

In contrast, Ms. Sincavage's second affidavit supported appellant. She said that, on April 12, 1995, the affiant "clearly heard, in no uncertain terms, Ms. Wisniewski repeatedly request to Mr. Ewing that she be placed on the work schedule in order that she may resume her duties as manager." As we have noted, appellant submitted an earlier, less detailed affidavit from Ms. Sincavage at the hearing. Clearly,

appellant was aware of, and took advantage of, her right to submit such evidence. As the hearing notice made clear, "This hearing is the last step at which either the claimant or the employer has the absolute right to present evidence." Even if the evidence appellant chose to submit at the hearing was not helpful, or not as helpful as she would have liked, or not as helpful as it could have been if properly developed, this does not alter the fact that she was afforded a full and fair opportunity to be heard. The Board, therefore, did not abuse its discretion in denying the request to reconsider.

To be sure, if appellant had been represented by counsel at the hearing, who could have gathered evidence and better presented appellant's case, the outcome may have been different. Nevertheless, appellant was on notice of her right to have counsel at the hearing. The Board was not required to afford her the proverbial "second bite at the apple."

**JUDGMENT AFFIRMED. PARTIES TO PAY THEIR OWN BRIEFING COSTS.**