589 A.2d 1311

**Wallace SINGLETARY**

**v.**

**MARYLAND STATE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.**

**No. 1133, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 15, 1991.

Barry C. Steel, Towson, for appellant.

Ralph S. Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Stuart M. Nathan, Asst. Atty. Gen. and Areta L. Kupchyk, Staff Atty., on the brief), Baltimore, for appellee.

Argued before MOYLAN, ROSALYN B. BELL and DAVIS, JJ.

ROSALYN B. BELL, Judge.

This case arises from an order of the Secretary of the Maryland State Department of Personnel, dismissing Wallace Singletary, appellant, from his position as a Correctional Officer II. This order was based on Singletary's refusal to submit to urinalysis to detect controlled dangerous substances. Singletary appealed the order to the Circuit Court for Baltimore County, which affirmed. On appeal to this Court, Singletary raises the following issues:

—Did the Department of Personnel err in concluding that the order to submit to urinalysis was lawful and issued in compliance with the applicable regulations?

—Did the Hearing Officer err in admitting the affidavit of the Secretary of Personnel?

—Did the Department of Personnel err in concluding that the order to submit to a drug test was supported by reasonable suspicion?

We shall hold that the order to submit to urinalysis did not comply with the applicable regulations and reverse. Therefore, we need not address the other issues.

## FACTS

Singletary had been employed as a Correctional Officer II assigned to the Maryland Reception Diagnostic & Classification Center (MRDCC), which is a facility of the Division

of Correction (DOC), since April, 1983. He had received overall superior performance ratings and had not previously had disciplinary actions taken against him. In 1985, Singletary was named Correctional Officer of the Year. Singletary has maintained throughout these proceedings that he has never used illicit drugs.

On April 26, 1989, the police conducted a search of the home of Andrea Jones, a switchboard operator at MRDCC. As a result of the search, Jones was arrested and charged with possession of cocaine. After her arrest, Lieutenant Douglas Cloman, a correctional officer employed with the DOC's Internal Investigative Unit, interviewed Jones. She provided him with the names of 24 individuals who she stated had either purchased drugs from her or had used drugs. She stated that she had sold Singletary marijuana, but did not say when or provide any other information regarding the alleged sale. Jones did not provide any written or signed statement regarding this matter. Cloman, however, wrote a report, summarizing the information Jones had provided.

Another officer assigned to DOC's Internal Investigative Unit, Lieutenant McWhorter, informed the warden of MRDCC, Merry Coplin, of the statements made by Jones. Based on this information, Warden Coplin presented Singletary with an Order to Submit to a Urine Test on April 29, 1989.[1] Warden Coplin asserted at the hearing that the order was given pursuant to COMAR 06.01.09. She never stated, however, that she had informed Singletary that the order was pursuant to COMAR 06.01.09. Moreover the order makes no reference to COMAR 06.01.09, but instead references DOC internal regulations.

---

**1.** According to COMAR 06.01.09.01B(2), Warden Coplin is Singletary's "appointing authority" because she has the power to make appointments and to terminate employment. As an appointing authority, Warden Coplin may order her employees to submit to testing for use of illegal drugs if she has reasonable suspicion. COMAR 06.01.09.04.

Singletary refused to submit to the drug test and was suspended from his employment on April 30, 1989. On May 12, 1989, the Maryland State Department of Public Safety and Correctional Services, appellee, filed charges for his removal with the Department of Personnel.

A hearing was held on July 10, 1989 before a hearing officer of the Department of Personnel. At the hearing, Singletary testified that he refused to submit to drug testing for a variety of reasons. He stated that he had never used drugs and had had no involvement with Jones. He also stated that he believed his rights were being violated and he was concerned about a false positive result. Additionally, he testified that he was not aware of COMAR 06.01.09 or the conditions for drug testing pursuant to those regulations. He stated that the only regulation regarding drug testing of which he was aware was Division of Correction Regulation 50–2(IV)(A)(3).[2] That regulation requires that an employee be suspected of being under the influence of illegal drugs and an immediate examination of the employee by Medical Department personnel. Because he was not under the influence of illegal drugs, nor was it alleged that he was suspected to be under the influence of illegal drugs, he believed he could not be subjected to a drug test.

At the hearing, Lt. Cloman testified about the basis for the reasonable suspicion to order Singletary to submit to drug testing. He testified that he believed Jones was a reliable informant for a number of reasons. He stated that her body language during their interview indicated that she was being truthful. She had a motive to be cooperative; she wanted to stay out of jail and retain her job. He also stated that he believed he had obtained Jones's confidence. Additionally, she named several people who had had attendance problems and one person who had had financial prob-

---

**2.** The order to submit to urinalysis, however, did not specifically reference this regulation. The order stated that it was "[p]ursuant to the Maryland Division of Correction Regulations as they pertain to the conduct of employees...."

lems, both of which indicate possible drug use. Moreover, several of the people Jones named had previously been arrested on drug charges and she named the undercover investigator who had made the controlled buys.

At this hearing, Warden Coplin testified that she believed there was a reasonable suspicion that Singletary had used illegal drugs based on the information obtained from Jones. Warden Coplin admitted, however, that there was no basis to believe Singletary was under the influence of drugs. She further testified that she had discussed the matter of drug testing with the Chief Counsel to the Department.[3] He stated that the order to submit to drug testing complied with the COMAR regulations.

Additionally, Warden Coplin testified that, when she gave Singletary the order to submit to drug testing, she read the order to him. She had explained that, if he refused to submit, charges for his dismissal would be filed. She had also explained his appeal rights to him. Warden Coplin, however, never stated that she explained that the order was pursuant to COMAR 06.01.09. In fact, she testified that, while the COMAR regulations were available to MRDCC's personnel office, a copy of those regulations had never been distributed to the employees.

During Warden Coplin's testimony, the affidavit of the Secretary of Personnel, Hilda Ford, was proffered. The affidavit stated that the Secretary, pursuant to COMAR 06.01.09.11(A)(1), had found that all correctional officers of the DOC occupied sensitive positions. The affidavit also stated that the Secretary had given verbal approval for drug testing of employees at MRDCC for whom there was reasonable suspicion to believe that they had used or were using illegal drugs. Additionally, the affidavit stated that this drug testing was in conformance with COMAR 06.01.-09. The affidavit was admitted over Singletary's objection.

---

3. It is unclear whether the Department referred to is the Department of Personnel or the Department of Public Safety and Correctional Services.

On September 6, 1989, the Department of Personnel issued its proposed decision.  It concluded that Singletary was insubordinate by failing to obey a lawful order of Warden Coplin and that Singletary had brought the classified service into public disrepute.  It proposed that Singletary be dismissed from his position as a Correctional Officer II and barred from employment at the Department of Public Safety and Correctional Services until April 29, 1992.  The Secretary of the Department of Personnel adopted the proposed findings and recommended actions.[4]  Singletary appealed to the circuit court.  That court affirmed the decision of the Secretary and this appeal followed.

## LAWFULNESS OF THE ORDER
### —Preservation of Issue—

Appellant argues that the order to submit to drug testing was unlawful because the procedures used in this case did not comply with a number of requirements set forth in COMAR 06.01.09.  Specifically, appellant claims: (1) the Secretary of the Department of Personnel failed to designate appellant's classification as a "sensitive classification," COMAR 06.01.09.01(6); (2) the Secretary failed to maintain a list of sensitive classifications, COMAR 06.01.09.02; (3) the Secretary failed to give approval to Warden Coplin to test appellant for drugs, COMAR 06.01.09.04A; (4) Warden Coplin did not have reasonable suspicion, COMAR 06.01.09.-04B; (5) appellant was not given a "controlled dangerous substance test order" prescribed by the Secretary, COMAR 06.01.09.04B; (6) appellee failed to obtain approval from the Secretary for its testing procedures and training program, COMAR 06.01.09.11A and 06.01.09.13; and (7) appellee failed to notify appellant in advance of testing of the existence of COMAR 06.01.09 and the circumstances under which employees may be tested, COMAR 06.01.09.15.  Because we shall hold that appellee failed to give proper notice

---

**4.**  The Secretary's order barred appellant from working for appellee until after April 30, 1992.

to appellant under COMAR 06.01.09.15, we need not and will not address the merits of appellant's other contentions.

Appellee argues, however, that the issue of the lawfulness of the order was not preserved for our review. We disagree and explain.

Appellee argued in its brief that appellant abandoned his claim that the order was unlawful because he did not raise this issue when he filed exceptions.[5] Appellee relies on *Pasarew Construction Co. v. Tower Apartments, Inc.*, 208 Md. 396, 118 A.2d 678 (1955). The Court in *Pasarew* held that, when an initial appeal is taken, all issues which appellant wishes to raise must be raised at that time or are deemed abandoned. *Pasarew*, 208 Md. at 402, 118 A.2d 678. The filing of exceptions in an administrative proceeding, however, is not an initial appeal. Exceptions, which are not specifically required, are somewhat analogous to a motion to alter or amend a judgment under Rules 2–534 and 3–534. Like a motion to alter or amend a judgment, it is not mandatory for a party to file exceptions to a proposed agency decision. *See* COMAR 06.01.01.-57(A)(1)(e)(i) and COMAR 06.01.01.61(F)(1). A party would not be barred from appealing the decision of the trial court if he or she did not file a motion to alter or amend the judgment. Neither would a party be barred from appealing the decision of the Secretary of the Department of Personnel if he or she did not file exceptions. Given this, it would be illogical to bar appellant from raising an issue argued before the agency because he filed exceptions but failed to articulate a particular argument.[6]

At oral argument, appellee also argued that appellant did not preserve this issue because he did not raise it sufficiently at the agency hearing. We disagree.

---

**5.** The letter of exceptions was not included in the record. Appellee provided this Court with that document in its appendix.

**6.** We note, however, that, if a party files exceptions, it would be better to articulate all of his or her objections to the proposed decision.

At the hearing on July 10, 1989, counsel for appellant argued that the order to submit to drug testing was unlawful. Specifically, he argued that there was no reasonable suspicion, that the procedures required under COMAR 06.-01.09 were not followed, and that appellant was not aware of COMAR 06.01.09.

During the cross-examination of Warden Coplin and in response to an objection, appellant's counsel stated: "I can prove where she did not follow the regulation. . . ." During that cross-examination, appellant's counsel also questioned Warden Coplin regarding whether MRDCC had distributed COMAR 06.01.09 to its employees. She answered those questions negatively.

Additionally, the issue of whether appellant received notice of COMAR 06.01.09 was raised during appellant's testimony. The following took place:

"[COUNSEL FOR APPELLEE]:

"I specifically asked [appellant] whether he's familiar with the DOP [Department of Personnel] COMAR regulations and he said yes, he was.

"[COUNSEL FOR APPELLANT]:

"Well he probably is now. But at the time of the incident he was not.

"[HEARING OFFICER]:

"Officer Singletary, at the time of the incident were you familiar with the COMAR regulation regarding drug testing?

"[APPELLANT]:

"I did not get into this until after it happened. I did some research on my own and got copies of this here. Copies of the thing Schaefer came out with, Governor's.

"[HEARING OFFICER]:

"Executive Order.

"[APPELLANT]:

"Right.

"[HEARING OFFICER]:

"Okay. On what do you base your assessment that it's necessary that you appear to be under the influence and that a medical examiner be present?

"[APPELLANT]:

"Based on the DCR [Department of Corrections Regulations] manual.

"[COUNSEL FOR APPELLANT]:

"To save time, I think it's number three on the front page.

"[APPELLANT]:

"Here it is here. It says that illegal possession and/or use of a controlled dangerous substance while on duty is strictly prohibited. Employees suspected of being under the influence of such drugs will be immediately examined by Medical Department personnel or personnel experienced in such examination.

"[HEARING OFFICER]:

"Is that DCR 50–2?

"[APPELLANT]:

"Yes, ma'am.

"[HEARING OFFICER]:

"And is that number three you're referring to?

"[APPELLANT]:

"Yes, ma'am.

*   *   *   *   *   *

"[COUNSEL FOR APPELLEE]:

"So then it's your testimony that you're not aware of any requirement under COMAR that says that you have to appear to be under the influence before you're ordered to take a test?

"[APPELLANT]:

"I didn't know anything about this until, I knew this rule existed. As far as this COMAR stuff, I never knew what it was until after the incident happened. I did some research and I got these papers.

"[COUNSEL FOR APPELLEE]:

"Okay. Let me repeat the question. So you're not aware of anything in the COMAR regulation that says before you can be ordered to take a test you have to appear to be under the influence of drugs? [7]

"[APPELLANT]:

"Prior to the incident I didn't know."

Given that much of appellant's testimony was elicited by the hearing officer, it would be incongruous to hold that the hearing officer was not aware that notification of appellant was at issue.

Moreover, appellee raised the issue of notice in its closing arguments at the agency hearing. Counsel for Appellee stated: "[W]hether he says he understood or knew the DOP [COMAR] regulation at that time doesn't matter." Furthermore, the proposed opinion and order concluded that appellant "was insubordinate by failing to obey a lawful order of the Warden." That conclusion necessarily implies that the order fully complied with COMAR 06.01.09, including the notice requirements. Therefore, we hold that the issue of whether appellant received proper notice was sufficiently preserved for review.

In his memorandum of law filed in the circuit court, appellant also argued that the decision of the Secretary should be reversed because the procedures in COMAR 06.01.09 were not followed. We note, however, that appellee never argued in the circuit court that this issue was not preserved for review. Thus, whether appellant preserved this issue for our review is not properly before us. Rule 8–131(a). In any event, the record clearly shows that the issue of whether the procedures in COMAR 06.01.09 were followed was raised in and decided by both the Department of Personnel and the circuit court.

---

7. COMAR 06.01.09 does not require that the person appear to be under the influence of drugs. It is DCR 50–2(IV)(A)(3) that contains that requirement. The only regulation known to appellant required he appear to be under the influence to trigger a test. Since there was no such allegation, he concluded he need not submit to the test.

—The Procedures—

As noted previously, appellant claims that many of the requirements of COMAR 06.01.09 were violated. We need only address his argument that COMAR 06.01.09.15 was violated because he received no notice of the existence of COMAR 06.01.09 or the conditions under which an employee could be subject to drug testing.

■ COMAR 06.01.09.15 provides:

"Each appointing authority *shall* assure that the appointing authority's employees are notified of the following:

"A. The existence of these regulations;

"B. The circumstances under which employees may be subject to these regulations; and

"C. The employees' rights to appeal any adverse action which results from the implementation of these regulations." (Emphasis added.)

The use of the word "shall" is presumed mandatory unless the context of the statute or regulation would indicate otherwise. *Moss v. Director, Patuxent Institution,* 279 Md. 561, 564–65, 369 A.2d 1011 (1977). The context of this regulation does not indicate that this provision is directory. In drafting COMAR 06.01.09, the Secretary of Personnel used the word "may" in some provisions, *see, e.g.,* COMAR 06.01.09.04A; 06.01.09.04E; 06.01.09.10A, and used the word "shall" in other provisions. *See, e.g.,* COMAR 06.01.-09.02; 06.01.09.03B; 06.01.09.04C. Clearly, then, the Secretary of Personnel was aware of the difference between "may" and "shall" and used these words accordingly. Therefore, we hold that the notification provisions in CO-MAR 06.01.09.15 are mandatory.

■ Whether appellee complied with these provisions is a question of fact. Thus, our review is limited "to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119 (1978), quoting *Dickinson–Tidewater, Inc. v. Supervisor,* 273 Md. 245,

256, 329 A.2d 18 (1974). We conclude that the record is so lacking in evidence of notification that a reasoning mind could not have reached the conclusion that appellee complied with the notification provisions. We explain.

Appellee argues that appellant received notice in compliance with COMAR 06.01.09.15. It points to the written order to submit to drug testing, a memorandum summarizing the meeting at which appellant received this order, and the testimony of Warden Coplin as evidence that appellant received proper notification. The written order, however, does not mention COMAR 06.01.09. It refers only to the Division of Correction Regulations, which are a distinct body of regulations applicable only to DOC employees.

The memorandum also does not indicate that appellant was informed of the existence of COMAR 06.01.09 and the conditions under which he could be tested for illegal drug use. It states that Warden Coplin read the order to appellant and presented it to him. It also states that, based on his refusal to comply, appellant was informed that charges for his termination would be filed and that he was placed on indefinite suspension. Appellant was also advised of his appeal rights.

Warden Coplin testified that she explained to appellant that the order was based on information provided by Jones. She stated that she read the order to him. She advised appellant that no criminal charges would be filed but that charges for his dismissal would be filed if he refused to comply with the order. She also advised appellant of his appeal rights.

Appellee argues that this evidence demonstrates that appellant received proper notice. We fail to see how reading an order that does not mention COMAR 06.01.09 and threatening dismissal constitutes notice of the existence of COMAR 06.01.09 and the conditions under which an employee may be subject to drug testing. Moreover, Warden Coplin never stated that she informed appellant that the order was issued pursuant to COMAR 06.01.09. On cross-

examination, Warden Coplin testified that a copy of CO-MAR 06.01.09 was available at MRDCC's personnel office. She also indicated, however, that she had not distributed a copy of the Governor's Executive Order on drug testing or a copy of COMAR 06.01.09.

Appellee also argues that, in any event, appellant was aware of COMAR 06.01.09. Appellant, however, testified that, at the time he was given the order to submit to drug testing, he was not aware of COMAR 06.01.09. He stated that he did not become aware of those regulations until sometime after he was suspended when he did his own research. The only regulation pertaining to drug testing of which he was aware when he received the order was an internal regulation of the DOC. That regulation requires that an employee be immediately examined by medical personnel if he is suspected of being under the influence of illegal drugs. Erik Beavers, a personnel officer with the DOC, testified that he was present when appellant was ordered to submit to a drug test. He stated that there was no reason to suspect appellant was under the influence of drugs. Appellant's testimony in this respect was uncontradicted.

Given the evidence in the record, we hold that the Secretary of Personnel could not reasonably have concluded that Warden Coplin, as appellant's appointing authority, informed appellant of the existence of COMAR 06.01.09 and the conditions under which he could be tested for drugs. Therefore, the Secretary of Personnel's conclusion that the order was lawful and that appellant's refusal to obey that order constituted insubordination must be reversed.

As appellant correctly points out:

> "An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down."

*Board of Education of Anne Arundel County v. Barbano,* 45 Md.App. 27, 41, 411 A.2d 124 (1980), quoting *United*

*States v. Heffner,* 420 F.2d 809, 811 (4th Cir.1969). This principle applies to regulations that are intended to confer important procedural benefits upon an individual as opposed to regulations adopted to ensure the orderly transaction of business before the agency. *Barbano,* 45 Md.App. at 41–42, 411 A.2d 124. The notification provisions contained in COMAR 06.01.09.15 are more than mere housekeeping rules. They are designed to ensure that State employees are aware of the conditions under which they may be tested for drugs and the right to appeal any adverse test results. COMAR 06.01.09.15 confers important procedural benefits and contemplates affirmative action on the part of the appointing authority to inform its employees of the regulations. An appointing authority cannot rely on the principle that people are presumed to know the law.

We recognize that this State faces a serious drug problem. We also recognize that the State should be able to test correctional officers for illegal drugs when there is reasonable suspicion of illegal drug use. We cannot expect drug abusers in the prison population to rehabilitate themselves when those in charge of their supervision are abusing drugs. We also note, however, that COMAR 06.01.09 was enacted to ensure a drug testing program which is fair, reasonable, accurate and consistent with applicable law and policy. It is vitally important that these regulations be scrupulously followed in order to protect the rights of individuals and to protect the integrity of the drug testing program. For all of the above reasons, we reverse the judgment of the circuit court, which affirmed the decision of the Secretary of Personnel.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY WITH INSTRUCTIONS TO REVERSE THE DECISION OF THE SECRETARY OF PERSONNEL.

COSTS TO BE PAID BY THE STATE OF MARYLAND.