985 A.2d 147

**Michelle PARHAM**

v.

**DEPARTMENT OF LABOR, LICENSING & REGISTRATION, et al.**

**No. 986 Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Dec. 30, 2009.

C. Matthew Hill (Public Justice Center on the brief), Baltimore for appellant.

Hilary A. Siderius (Douglas F. Gansler, Atty. Gen. on the brief), Baltimore, for appellee.

Panel: SALMON, KEHOE, James A. Kenney, III, (retired, specially assigned).

KENNEY, J.

Michelle Parham, appellant, filed a claim for unemployment benefits following the end of her employment with Mid Atlantic Baking Co., LLC ("Mid Atlantic"). A Claims Specialist from the Department of Labor, Licensing and Regulation ("DLLR") granted Parham benefits on July 19, 2007. Mid Atlantic appealed, and a hearing was held on August 21, 2007. On August 30, 2007, the DLLR hearing examiner found that Parham had left Mid Atlantic's employment voluntarily and, therefore, was not entitled to unemployment benefits. She appealed to the DLLR Board of Appeals ("the Board"), which adopted the hearing examiner's findings of fact and affirmed his decision to deny her benefits. The Circuit Court for Baltimore City affirmed the decision of the Board on July 1, 2008. Parham appeals that decision, raising one question, which we have reworded as follows: [1]

> Was the hearing examiner's finding and conclusion that Parham voluntarily quit her job, which was adopted by the Board, supported by competent, material, and substantial record evidence?

For the following reasons, we shall reverse the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Parham was employed at Mid Atlantic from January 31, 2007, through April 14, 2007. During this period she missed three days of work: March 5, April 11 and April 12. On April 14, 2007, she returned to work for her next scheduled shift following the April 11 and 12 absences. After Parham "clocked in," Barbara Wolferman, the "manager" on duty, asked to talk with her. The substance of this conversation,

---

1. Parham asked: "Did the DLLR decision violate the appellant's right to due process of law because the only evidence of the appellant's intent in separating from Mid Atlantic is unreliable hearsay that does not constitute substantial evidence?"

which is the heart of this matter, is disputed. What is not in dispute is that, when the conversation ended, Parham left the premises without "clocking out" and did not contact Mid Atlantic again.

On June 19, 2007, a Claims Specialist from DLLR determined that "insufficient information [had] been presented to show that the claimant's actions constituted misconduct in connection with the work" and that "the circumstances surrounding the separation [did] not warrant a disqualification under section 8–1002 [2] or 8–1003 [3] of the Maryland Unemployment Insurance Law."

Mid Atlantic appealed the Claim Specialist's determination on August 3, 2007. The notice of a hearing on the appeal, sent to Parham on August 7, 2007, stated that the issues on appeal were: "Whether the claimant's separation from this employment was for a disqualifying reason within the meaning of the MD Code Annotated Labor and Employment Article, Title 8, Sections 8–1001 (voluntary quit for good cause),[4] 8–1002–

---

**2.** Maryland Code (1991, 1999 Repl.Vol.), § 8–1002(b) of the Labor and Employment Article ("Lab. & Empl.") provides: "An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is gross misconduct in connection with employment." Lab. & Empl. § 8–1002(a) defines "gross misconduct" as "the conduct of an employee" that exhibits a "deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit" or "repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations." Gross misconduct does not include "aggravated misconduct, as defined under § 8–1002.1" or "other misconduct, as defined under § 8–1003[.]"

**3.** Lab. & Empl. § 8–1003 provides: "An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the Secretary finds that unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is misconduct in connection with employment but that is not" "aggravated misconduct, under § 8–1002.1" or "gross misconduct under § 8–1002[.]"

**4.** Lab. & Empl. § 8–1001(a) provides: "An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if the

1002[.]1 [5] (gross/aggravated misconduct connected with the work) or 8–1003 (misconduct connected with the work)."

The notice also stated that "[e]ach Party should arrange for all necessary witnesses to attend the hearing, and for all necessary documents to be presented at the hearing," and, under the heading "Instructions for Telephone Hearings," that "[a]ny evidence [parties] wish the hearing examiner to consider must be received by the Appeals Division at least five working days prior to the hearing. Copies must be sent to other parties."

A telephone hearing was set for August 21, 2007. On August 16, 2007, a Mid Atlantic representative sent to DLLR a "Fax" captioned "Exhibits Attached," stating that it "would

---

Secretary finds that unemployment results from voluntarily leaving work without good cause." Pursuant to Lab. & Empl. § 8–1001(b), "[t]he Secretary may find that a cause for voluntarily leaving is good cause" if "the cause is directly attributable to, arising from, or connected with" certain circumstances including "the conditions of employment[,]" "the actions of the employing unit," or if "an individual is laid off from employment through no fault of [their own]." Under Lab. & Empl. § 8–1001(c): "A circumstance for voluntarily leaving work is valid" if it is "a substantial cause that is directly attributable to, arising from, or connected with conditions of employment or actions of the employing unit" or "of such necessitous or compelling nature that the individual has no reasonable alternative other than leaving the employment." Also, if "an individual [ ] leaves employment because of [his/her] health [ ] or [the health of] another for whom the individual must care, the individual shall submit a written statement or other documentary evidence of the health problem from a hospital or physician."

**5.** Pursuant to Lab. & Empl. § 8–1002.1(b): "An individual who otherwise is eligible to receive benefits is disqualified from receiving benefits if unemployment results from discharge or suspension as a disciplinary measure for behavior that the Secretary finds is aggravated misconduct in connection with employment." Lab. & Empl. § 8–1002.1(a) defines "aggravated misconduct" as "behavior committed with actual malice and deliberate disregard for the property, safety, or life of others" that "affects the employer, fellow employees, subcontractors, invitees of the employer, members of the public, or the ultimate consumer of the employer's product or services" and "consists of either physical assault or property loss or damage so serious that the penalties of misconduct or gross misconduct are not sufficient." "Aggravated misconduct" does not include "gross misconduct, as defined under § 8–1002" or "misconduct, as defined under § 8–1003[.]"

like to submit the attached documents as exhibits for the hearing." The attached documents included a section of the applicable union contract dealing with the probationary status of new employees and two forms related to Parham's separation from the company, titled "Employee Disciplinary Report" ("EDR") and "Employee Hire and Change Report" ("EHCR").

The EDR, dated April 11, 2007,[6] described the "Nature of Incident" as "Unexcused Absence." Under "Facts of the Incident" was written: "Said her legs hurt-won't be in. (April 11, 2007). Called 4–12–07 said she won't be in." Under the heading "Action to be Taken," the box for "Termination" was marked. Next to "Signature of Supervisor," it was signed "Barbara Wolferman."

The EHCR, dated April 24, 2007, described the "Change(s)" as "Quit" with the following under "Remarks:" "Job Abandonment Was Ask [sic] To Call Manager Refuse For No Reason And Walk Out." It was signed by "Donald A. Kauffman" as "Dept. Head" and "Bill Hogan" as "Plant Manager."

During the hearing on August 21, 2007, Mid Atlantic presented two witnesses: Erica Stokes, a human resources coordinator for Mid Atlantic, and Kauffman. Neither was present when Parham left work on April 14. Stokes testified that Parham was instructed, on April 12, to speak with Kauffman about her absenteeism when she returned to work.[7] She also testified that she was not present on April 14 but that her records showed that Parham was written up for quitting "because she walked out without punching out on April 14th." In her testimony, Stokes referred only to the EHCR and Parham's timecard. She did not refer to the EDR or indicate that she had discussed the incident with Wolferman directly.

---

6. The form indicates the "Date of Incident" as both "4–11–07 + 4–12–07."

7. Stokes testified: "So as a result of having missed April the 11th and the 12th, the instructions were, when you come back to work, it's your responsibility to report to your manager."

Kauffman testified that he learned of the incident on April 15, 2007, when he returned to work. He received the write-up for Parham's absences of April 11 and 12, 2007, and talked to Wolferman about her April 14 discussion with Parham. He testified:

[T]hat next day when I came to work, the 15th, that's when [Wolferman] had told me that [Parham] had come into work, and that she had words with her saying that she did not, you know, like what was, you know, she had discussed the absenteeism of the 11th and 12th with her, and she wasn't happy with that.

So [Wolferman] wrote her up and wanted [Parham] to sign it. She refused. There's no signature on the write-up. She refused to sign it. At that point, [Parham] had left the building. She didn't even punch out. She just left the building and she was instructed that she needed to talk to me before she came back to work.[8]

Parham's testimony at the hearing directly contradicted Stokes and Kauffman's testimony that she was told to call Kauffman. Parham testified:

Barbara told me that I had to call out and Don said I couldn't operate so she had to let me go. So I just left. What was I supposed to do-stand there and disrespect the lady or argue with her? I had to leave the building.

She also stated, "No one told me to call anyone. [Wolferman] just told me to leave the building. That was that."

In deciding the matter against Parham, the hearing examiner found:

.... When [Parham] arrived for work on April 14th, she was told by her supervisor that she must report to the manager, Donald Kauffman. [Parham] never reported to Mr. Kauffman but left the premises without punching off the time clock. [Parham] was not heard from after that time, although work was available for her had she continued to report for her next scheduled workday. The manager,

---

8. It appears that Kauffman was not on site on April 14, 2007.

Mr. Kauffman did not have a conversation with [Parham] to determine the circumstances for her absences and had not made a determination whether or not he should exercise the employer's right to terminate the claimant's employment within the probationary period.

Finding that Parham had failed to present sufficient evidence that the quit was for either good cause or due to a valid circumstance, the hearing examiner concluded that Parham had voluntarily quit and reversed the determination of the Claims Specialist, thereby denying Parham unemployment benefits under Lab. & Empl § 8–1001.

Parham appealed the hearing examiner's decision to the Board, which, upon review of the record, "adopted" the findings of fact and conclusions of law of the hearing examiner. The Board affirmed the decision of the hearing examiner, denying Parham unemployment benefits. Parham then sought judicial review in the Circuit Court for Baltimore City. The Board opted to participate as an appellee pursuant to Lab. & Emp. § 8–512(a)(3).[9] The Office of the Attorney General, representing the Board, filed a response and informed Mid Atlantic that if it wished to participate in the appeal it had thirty days to file a response. No response was filed by Mid Atlantic. The circuit court affirmed the decision of the Board. This appeal followed.

### STANDARD OF REVIEW

"When reviewing an administrative agency decision, our role 'is precisely the same as that of the circuit court.'" *Tabassi v. Carroll County Dep't of Soc. Servs.,* 182 Md.App. 80, 85, 957 A.2d 620 (2008) (quoting *Howard County Dep't of Soc. Servs. v. Linda J.,* 161 Md.App. 402, 407, 869 A.2d 404

---

**9.** Lab. & Empl. § 8–512(a)(3) provides: "The Board of Appeals may be a party to an appeal under this section and may be represented by the Attorney General or by any qualified lawyer who is a regular salaried employee of the Board of Appeals and who has been designated by it for that purpose on recommendation of the Attorney General."

(2005) (citation omitted)). We review the administrative decision itself and not the decision of the circuit court. *Id.*

Lab. & Empl. § 8–512(d) establishes the scope of review of a final decision of a Board of Appeals. It provides:

In a judicial proceeding under this section, findings of fact of the Board of Appeals are conclusive and the jurisdiction of the court is confined to questions of law if:

(1) findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record; and

(2) there is no fraud.

In reviewing an administrative action, the Court of Appeals has said that "[a] court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). In addition, the Court of Appeals, quoting its decision in *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984), stated that "[a] reviewing 'Court may not uphold the agency order unless it is sustainable on the agency's findings and for the reasons stated by the agency.'" *United Parcel,* 336 Md. at 577, 650 A.2d 226.

This Court, in *Dept. of Economic & Empl. Dev. v. Taylor,* 108 Md.App. 250, 261–262, 671 A.2d 523 (1996), *aff'd, DLLR v. Taylor,* 344 Md. 687, 690 A.2d 508 (1997), stated:

Our review of the Board's findings of fact is deferential. In the absence of fraud, our inquiry is whether the findings are supported by substantial evidence and are reasonable, not whether they are right. *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 515, 390 A.2d 1119 (1978). We examine the agency's findings of fact to determine whether they are supported by "substantial evidence" in light of the record as a whole-that is, whether a reasoning mind could have made those findings from the evidence adduced. *Singletary v. Maryland State Dep't of Public Safety and Corr. Services,* 87 Md.App. 405, 416, 589 A.2d 1311 (1991).

## DISCUSSION

This case presents the narrow question of whether the hearing examiner's finding and conclusion that Parham voluntarily quit her job, which was adopted by the Board, was supported by competent, material, and substantial evidence and was reasonable.

Parham argues that the decision violates her right to due process of law. She states:

> In the case at bar, the only factual finding bearing on [her] intent in leaving Mid Atlantic's building on April 14 is that she "was told by her supervisor that she must report to the manager, Donald Kauffman" but did not do so and instead walked out of the building. [ ] The only evidentiary basis for this finding is Kauffman's testimony that [she] "just left the building [on April 14] and she was instructed to talk to me before she came back to work." This hearsay evidence was accepted for the truth of the matter asserted: that someone told Kauffman that [she] was told when she returned to work on April 14 to report to Kauffman, but she instead left the building.

The Board first argues that Parham's arguments "were not preserved for appellate review," and, therefore, we should decline to consider them:

> Ms. Parham argues for the first time on appeal before this Court that the Hearing Examiner's decision was based upon unreliable hearsay and, therefore, the Hearing Examiner violated her due process rights. [ ] First, during the hearing, Ms. Parham did not object to the testimony she now identifies as hearsay. Second, Ms. Parham did not raise this issue in her appeal of the Hearing Examiner's decision to the Board, which never had the opportunity to consider it. [ ] Accordingly, this argument is foreclosed from appellate review. *See [Department of Economic & Employment Development v.] Owens,* 75 Md.App. [472,] 477, 541 A.2d 1324 [(1988)].

Arguing that "[t]he issue of whether the Board's decision was supported by sufficient evidence is preserved," Parham states:

As hearsay is generally admissible in an administrative hearing, there was little reason for [her] to have noted an objection, even if she had known as a *pro se* claimant to do so. But the question of admissibility is very different from whether the total quantity of evidence considered by the hearing examiner and Board of Appeals is sufficient to constitute substantial evidence and comport with due process

Parham cites *Maryland Dept. of Human Res. v. Bo Peep Day Nursery*, 317 Md. 573, 565 A.2d 1015 (1989), *cert. denied, Cassilly v. Maryland Dep't of Human Res.*, 494 U.S. 1067, 110 S.Ct. 1784, 108 L.Ed.2d 786 (1990), where, she states, the Court of Appeals noted the distinction between objecting to the admissibility of hearsay evidence and arguing "that hearsay was both so unreliable and so pervasive as to undermine the substantiality of the evidence" supporting the agency decision. According to Parham:

DLLR's proposition also runs counter to the thrust of Md.Code Ann., Labor and Employment Article § 8–5A–12(d)(1) (2008), which provides that the Court shall review Board decisions for whether its "findings of fact are supported by evidence that is competent, material, and substantial in view of the entire record."

It is the challenge to the underlying basis of the Board's decision, not admissibility, that Ms. Parham has raised here, asking if the Board's decision was supported by substantial evidence where the sole evidentiary basis of the decision was Kauffman's rendition of Wolferman's unreliable April 15 hearsay statements regarding the contents of the April 14 conversation

■ Rule 8–131(a) provides that, "[o]rdinarily," an appellate court will not decide any issue "unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." This Rule applies to appellate review of administrative proceedings. *Owens,* 75 Md.App. at

478, 541 A.2d 1324 (An argument is "foreclosed from appellate review" if the party fails to "raise the theory at some point in the administrative process.")

Parham's *pro se* hand-written appeal of the hearing examiner's decision, though not written in terms of "unreliable hearsay" and "the denial of due process," clearly indicated that the factual dispute surrounding her conversation with Wolferman is the heart of the case. In our view, this was sufficient to raise the issue before the Board and, coupled with her testimony at the hearing and Wolferman's obvious absence from the proceeding, preserved the issue for appeal.

### The Finding That Parham Quit

The Board contends that the hearing examiner correctly found that Parham voluntarily quit by leaving work without punching out and never contacting Kauffman, the manager who had the authority to fire her. We must view the record as a whole to determine whether the evidence supporting that finding was "competent, material, and substantial." Lab. & Empl. § 8–5A–12(d)(1); *Singletary,* 87 Md.App. at 416, 589 A.2d 1311.

In the context of Lab. & Empl. § 8–1001, an employee's intent to quit is a necessary element of "voluntarily leaving work." *Taylor,* 108 Md.App. at 273, 671 A.2d 523. Intent is an issue of fact to be decided by drawing reasonable inferences from admitted conduct. *Id.* at 273, 671 A.2d 523; *Dep't of Economic and Employment Dev. v. Hager,* 96 Md. App. 362, 371, 625 A.2d 342 (1993). The hearing examiner found that "[w]hen [Parham] arrived for work on April 14th, she was told by her supervisor that she must report to the manager, Donald Kauffman." As this was the factual scenario alleged by Mid Atlantic, it follows that the hearing examiner accepted as credible Stokes' and Kauffman's testimony that Parham was told to report to Kauffman and rejected Parham's testimony that she was told on April 14 that she had been terminated.

■ Parham contends that the EDR supports her version of what happened on April 14.[10] In her notice of appeal to the Board, she wrote: "Ms. Barbara Wolferman terminated me on my first call out on April 11, 2007. Ms. Wolferman sign [sic] and dated my Disciplinary Report on April 11, 2007, and Ms. Wolferman added on my call out for April 12, 2007[.]"

On appeal to this Court, Parham argues:

Mid Atlantic's own documentary evidence based on Wolferman's first-hand knowledge of the April 14 conversation corroborated Ms. Parham's account and contradicted Kauffman: The "[EDR]" presented to Ms. Parham on April 14 stated specifically that the "Action to be Taken" with her was "Termination." The [EDR] was signed by Wolferman acting as an agent for Mid Atlantic and based on her first-hand knowledge. . . .

The EDR, purportedly signed by Wolferman on April 11, 2007, clearly indicates that the disciplinary action to be taken against Parham is termination.[11] It was created prior to April 14 by Wolferman, provides a line for the signature of the

---

10. The DLLR Board argues that the EDR was never offered into evidence during the telephone hearing on August 21, 2007, and is, therefore, not part of the record before this Court. We are not persuaded. As Parham noted, unemployment benefit hearings are informal in nature and "may not be bound by common law or statutory rules as to the admissibility of evidence or by technical rules of procedures." COMAR 09.32.06.02(F). The instructions for the hearing, sent to the parties on August 7, 2007, required that any evidence the parties wished the hearing examiner to consider be received by the Appeals Division five days prior to the hearing, with copies to the other parties. In its transmittal captioned "Exhibit Attached," Mid Atlantic stated that "the employer would like to submit the attached documents as exhibits." There was no indication in either the hearing instructions or in the transcript of the hearing itself that the formal introduction of documentary evidence during the course of the hearing would be necessary in order to have the document considered by the hearing examiner. Moreover, during the telephone hearing, Mid Atlantic's employees referred several times to documents from this packet, including the EDR.

11. It is unclear when and by whom the information on the EDR pertaining to Parham's April 12, 2007, call-out was added, but it appears to be in Wolferman's handwriting.

employee, and would appear to be the "write-up" Kauffman is referring to when he testified:

> [T]hat next day when I came to work, the 15th, that's when [Wolferman] had told me [Parham] had come into work, and that she had words with her saying that she did not, you know, like what was, you know, she had discussed the absenteeism of the 11th and 12th with her, and she wasn't happy.
>
> So she wrote her up and wanted her to sign it. She refused. There's no signature on the write-up. She refused to sign it . . . . .

The EDR lends support to Parham's testimony that she was told she was terminated. There are, for example, several "warning" blocks on the EDR that could be checked and a block for "other" action to be taken, but the only block checked was the one marked "Termination." Also, there is nothing written anywhere on the form to indicate that Parham was to talk to anyone prior to termination, and no "Employee Comments" are noted.

▇▇▇▇ We recognize, of course, that hearsay is admissible in administrative proceedings. *Kade v. Charles H. Hickey School*, 80 Md.App. 721, 725, 566 A.2d 148 (1989). Yet, if it is to be relied upon as the basis of an administrative decision, the hearsay "must be competent and have probative force." *Id.* In light of the record as a whole and the obvious and singular importance of what happened in the meeting between Parham and Wolferman, Stokes' and Kauffman's hearsay testimony that Wolferman told Parham to call Kauffman on April 14, 2007, did not constitute "competent, material, and substantial" evidence that Parham voluntarily quit.

▇▇▇▇ As Parham points out, the courts have looked to many factors to determine the reliability of hearsay evidence. One indication of its reliability is whether it has been directly contradicted by other more reliable evidence. *See Rogers v. Radio Shack*, 271 Md. 126, 128, 314 A.2d 113 (1974). Another factor is whether the appellant had a meaningful opportunity

to cross examine the hearsay declarant.  *Kade,* 80 Md.App. at 725–27, 566 A.2d 148.

Stokes and Kauffman were not present when Wolferman and Parham had their April 14 discussion.  Their testimony to what Wolferman said took place on that day, if not directly contradicted, certainly was not supported by the EDR that Wolferman prepared.  The EHCR, while relevant, was also based on Wolferman's report to Kauffman and not on first-hand knowledge.  Because Wolferman, obviously the most competent and critical Mid Atlantic witness to the April 14 exchange, did not testify, there was no opportunity for meaningful cross-examination.  Moreover, Mid Atlantic provided no explanation of her unavailability.  *See Kade,* 80 Md.App. at 721, 566 A.2d 148.

In consideration of the issue presented and the record as a whole, Stokes' and Kauffman's testimony surrounding the meeting on April 14 did not constitute competent, material, and substantial evidence that Parham voluntarily quit.  Therefore, we reverse the decision of the Board disqualifying Parham from receiving benefits under Lab. & Empl. § 8–1001.

### Disposition

The Board, by way of a footnote and without citation to any authority, contends that we "must remand [this] case to the Board so that the Board may determine if [Parham] was terminated from her employment with Mid Atlantic for a disqualifying reason amounting to gross misconduct ..., misconduct ..., or ... for a reason that does not disqualify her from receiving employment insurance benefits."  We disagree.

The Claims Specialist previously determined that Parham was discharged based on her attendance and that the circumstances surrounding the separation did not warrant disqualification under Lab. & Empl. §§ 8–1002 or 8–1003.[12]  In its appeal of that decision, Mid Atlantic stated that "[Parham]

---

12.  We note that Parham testified that she had a doctor's note related to her absences on April 11 and 12, 2007.

was considered to voluntarily quit after walking off the job." At the hearing, when asked by the hearing examiner, "[W]as she discharged or did she quit?" Stokes said, "She quit." Mid Atlantic did not pursue the matter of Parham's absenteeism and, instead, contended that it did not discharge Parham for any "disqualifying reason." We see no reason to remand for Mid Atlantic to justify a termination that it has clearly said never took place.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO REMAND FURTHER TO THE DEPARTMENT OF LABOR, LICENSING AND REGULATION WITH DIRECTIONS TO REVERSE ITS DENIAL OF UNEMPLOYMENT BENEFITS TO APPELLANT. COSTS TO BE PAID BY THE DEPARTMENT OF LABOR, LICENSING AND REGULATION.**